UNITED STATES, Appellant

v

MARION C. JACKSON, JR., Airman Third Class,
U. S. Air Force, Appellee

13 USCMA 66, 32 CMR 66

No. 15,644

May 4, 1962

*Captain Donald W. Brewer* argued the cause for Appellant, United States. With him on the brief was *Colonel Merlin W. Baker*.

*Colonel Daniel E. Henderson, Jr.*, argued the cause for Appellee, Accused. With him on the brief was *Colonel Joseph E. Krysakowski*.

## Opinion of the Court

FERGUSON, Judge:

On September 3, 1960, Airman Third Class Joseph Moore, Jr., purchased a United States Postal Money Order in the amount of $48.00, from the Base Post Office, Lackland Air Force Base, Texas. In accordance with current post office practices, the money order was delivered to him with the spaces for insertion of the purchaser's name and the payee's name left blank. He returned to his room in a nearby barracks and placed the money order—still incomplete—in a desk drawer. Accused, Moore's roommate, removed the money order from the drawer and sought out a friend, Airman Murphy. At accused's request, Murphy inserted his own name as purchaser and that of accused as payee on the instrument. Murphy's pen did not work properly and, from the stipulated evidence, it

is fairly inferable that accused subsequently traced over both insertions at some later hour.

On the same day, accused made a long distance telephone call at the local Bell Telephone Center. He paid the toll with the money order, identifying himself as the payee and so endorsing it. As the charge for this service amounted only to $3.96, he received the balance of the money order's face value in change.

On August 15, 1961, accused was duly arraigned before a general court-martial convened at Lackland Air Force Base, Texas, upon two charges of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and one of uttering a forged instrument, in violation of Code, supra, Article 123, 10 USC § 923. He entered pleas of guilty and was sentenced to bad-conduct discharge, confinement at hard labor for twelve months, forfeiture of $25.00 per month for twelve months, and reduction to the grade of basic airman. The convening authority reduced the period of confinement and forfeitures to six months but otherwise approved the sentence.

The board of review determined that the insertion by Murphy of the two names in the money order did not constitute the offense of forgery. It concluded, therefore, that the instrument was not uttered within the meaning of Code, supra, Article 123, and set aside the findings of guilty with respect to that charge. Moreover, it found that the facts outlined above did not, as a matter of law, make out the offense of larceny by false pretenses from the Telephone Center. Accordingly, it affirmed only so much of the findings of guilty as related to accused's theft of the money order from Airman Moore and only so much of the sentence as provided for confinement at hard labor for five months, forfeiture of $25.00 per month for a like period, and reduction to the grade of basic airman.

The Judge Advocate General, United States Air Force, has certified the decision of the board of review to this Court upon the following questions:

"a. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE ACTS OF THE ACCUSED, AS ESTABLISHED BY THE RECORD OF TRIAL, DEMONSTRATED AS A MATTER OF LAW THAT THE OFFENSE CHARGED IN SPECIFICATION 2 OF CHARGE I HAD NOT BEEN COMMITTED AND HENCE, THAT THE GUILTY PLEA TO SUCH SPECIFICATION WAS IMPROVIDENT?

"b. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE ACTS OF THE ACCUSED, AS ESTABLISHED BY THE RECORD OF TRIAL, DEMONSTRATED AS A MATTER OF LAW THAT THE OFFENSE OF UTTERING A FORGED INSTRUMENT ALLEGED IN THE SPECIFICATION OF CHARGE II HAD NOT BEEN COMMITTED AND HENCE, THAT THE GUILTY PLEA TO SUCH SPECIFICATION WAS IMPROVIDENT?

"c. IF THE SECOND QUESTION IS ANSWERED IN THE AFFIRMATIVE, DOES ACCUSED'S PLEA OF GUILTY TO THE SPECIFICATION OF CHARGE II, CONSIDERED IN CONJUNCTION WITH THE FACTS AS ESTABLISHED BY THE RECORD OF TRIAL, ESTABLISH ACCUSED'S GUILT OF ANY LESSER INCLUDED OFFENSE?"

We turn first to an inquiry whether, as a matter of law, the offense of uttering a forged instrument, in violation of Code, supra, Article 123, is made out by a demonstration that accused uttered a validly issued money order after actively participating in the insertion of another's name as its purchaser and his own name as its payee. As the board of review pointed out, the ultimate question posed is whether the entry of Murphy's name as purchaser and accused's as payee constitutes a false making or alteration of the money order, for it is certain that, unless the instrument was so forged, there could be no criminality in its utterance. Code, supra, Article 123; United States v Strand, 6 USCMA 297, 20 CMR 13.

We have no doubt concerning the answer to this question. A money order is clearly an instrument which may be the subject of forgery. United States v Manuel, 3 USCMA 739, 14 CMR 157; United States v Di Pietroantonio, 289 F2d 122 (CA 2d Cir) (1961); United States v Long, 30 Fed

678 (ED Ga) (1887). And see 18 USC § 500.

Admittedly, the money order in this case was validly issued by the Base Post Office with appropriate signatures and stamps affixed thereto. In accordance with current postal practice, it was delivered to the actual purchaser with the spaces for his name and that of the payee left blank. It was these blanks which accused procured his confederate to fill in with their own names. Accused's plea of guilty and the stipulated facts establish beyond peradventure that this was done with the requisite intent to defraud. And the insertion of the names on the stolen order had the effect of barring any claim by the real purchaser against the Post Office Department for the issuance of a duplicate order. 39 CFR § 61.1 (f) (2). Thus, the action substantially changed Airman Moore's legal rights to his prejudice. Code, supra, Article 123; United States v Strand, supra.

The document involved in this case is, then, as the Government contends, a genuinely executed instrument whose contents were filled in without authority. It has long been settled that an instrument is falsely made when, though genuinely executed, blanks therein are filled in by another without authority or contrary to the authority given. Quick Service Box Co. v St. Paul Mercury Indemnity Co. 95 F2d 15 (CA 7th Cir) (1938).

In the cited case, an office manager was authorized to sign only completed checks which had been countersigned by a vice-president of the institution by which both were employed. Nevertheless, he obtained the vice-president's signature on certain blank checks; signed them himself; thereafter completed the dates, numbers and amounts; and made them all payable to "Cash." Presenting the checks for payment, he obtained the proceeds. "We agree," said the Circuit Court of Appeals, at page 17, "with the District Court that the effectuation of the signature of the drawer by utilization of its printed signature *and the addition of the unau-*thorized signature of the employee with an intent to defraud . . . constituted a forgery." (Emphasis supplied.)

In People v Kubanek, 370 Ill 646, 19 NE2d 573 (1939), one Burns delivered to the defendant certain signed, blank checks, with instructions to fill in the amount and use them to pay medical expenses and a possible funeral bill. Defendant instead added his own name as payee of a large sum in each check. The court held that the defendant's insertion of his own name constituted a false making of the checks. It noted, at page 574:

". . . The general rule is that where authority is given to one to fill in blanks in an instrument, a filling in of such blanks other than as authorized constitutes forgery, where the other elements of forgery are present."

See also People v Mau, 377 Ill 199, 36 NE2d 235 (1941); Hicks v State, 176 Ga 72, 168 SE 899 (1933); and State v Daems, 97 Mont 486, 37 P2d 322 (1934).

Appellate defense counsel contend, however, that the foregoing authorities are to be distinguished for, unlike the record before us, they involved action by an agent in derogation of his authority. The argument misapprehends the rationale in the cited decisions. The agency of the defendant and the extent of his power to act on behalf of his principal are chiefly important as demonstrating that he lacked authority so to execute the instrument and that it was falsely made. People v Kubanek, supra. In the instant case, there is absolutely no question that accused caused the money order to be altered without any authority to do so, for he admittedly stole it. The record before us, therefore, presents a much stronger case of the false making of an executed instrument than those involving acts by an agent, and the distinction sought to be invoked by the defense is without merit. Cf. 2 Wharton, Criminal Law and Procedure, § 628; United States v Di Pietroantonio, supra.

**69**

Consideration of the next question involves the board of review's holding that accused's utterance of the falsely made money order, as a matter of law, did not constitute larceny by false pretenses from the Bell Telephone Center. With this conclusion we must also disagree.[1]

The board reasoned that a postal money order "had all the earmarks of a negotiable [bearer] instrument" and, in effect, what accused did "was to steal a bearer instrument and pass it . . . to an innocent purchaser who acquired lawful title thereto." The board concluded that Bell, in paying the order in good faith, obtained lawful title thereto and, as it bargained for no more, there was no material misrepresentation involved in accused's implied declaration that he was the order's legitimate payee and Murphy its real purchaser. This reasoning is premised upon a misunderstanding of the legal character of postal money orders. They are simply not negotiable paper.

The postal money order system was established by the act of June 8, 1872, chapter 335, § 102, 17 Stat 297. It was expressly designed to "promote public convenience, and to insure greater security in the transfer of money through the mail." Revised Statutes, § 4027, 39 USC § 711. From its inception, the system has been held to provide, not for the issuance of negotiable paper by the United States at the instance of a purchaser, but for an order by the issuing postmaster upon a post office for the payment of money to one designated by the purchaser as payee. Bolognesi v United States, 189 Fed 335 (CA 2d Cir) (1911); United States v Northwestern Nat. Bank & Trust Co., 35 F Supp 484 (D Minn) (1940).

In Lewin v United States, 170 F Supp 646 (Ct Cl) (1959), it appeared that the plaintiff presented ninety-five postal money orders to the Postmaster General for payment. The requested disbursement was refused until such time as plaintiff produced evidence of the genuineness of the endorsements on the orders. In granting judgment for the United States on the basis of a statutory provision which permitted the Postmaster General to demand such proof, the Court said, at page 648:

"The instruments involved in this case are not 'negotiable instruments' and are not therefore governed by the laws applicable to commercial paper. They are specialties called 'money orders' and are governed by the postal laws. In order for the plaintiff to receive payment he must comply with the procedure required by those laws. In order to obtain payment on these money orders he must 'make proof of the genuineness of the indorsements as the Postmaster General may require.' [39 USC § 723]"

Thus, if a holder in due course pays falsely made and stolen money orders in good faith and, in turn, receives payment therefor from the post office, the United States may recover the latter funds. United States v Northwestern Nat. Bank & Trust Co., supra; United States v Stockgrowers' Nat. Bank, 30 Fed 912 (D Colo) (1887); Jaselli v Riggs Nat. Bank, 36 App DC 159 (1911); Bolognesi v United States, supra. When Bell acquired the falsely made order in this case by paying over its value to accused, it obtained no right to recover the proceeds from the Post Office Department. Indeed, if the order was paid by the United States—a fact which is not established in the record—the United States would, under existing law, be entitled to recover the funds. As all concede that Bell at least bargained for an indefeasible right in this regard and as accused certainly implied by negotiation of the order that he was entitled to convey that right, it seems clear that the stipulated facts are entirely consistent with his plea of guilty to larceny. We conclude, therefore, that the board of re-

---

[1] We are not concerned here with an issue of multiplicity of charges, for the law officer advised the court members that the charges of uttering and larceny from the Telephone Center were but a single offense for sentencing purposes.

view erred in setting aside the findings of guilty with respect to this Charge.

As the request for an answer to the third certified question was conditioned upon our affirmance of the board's action on the forgery charge, we need not examine the problem which it poses.

The first and second certified questions are answered in the negative. The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. The board of review may reinstate the findings of guilty of specification 2 of Charge I and the specification of Charge II and conduct such further review of the proceedings as that action necessitates.

Chief Judge QUINN and Judge KILDAY concur.