**UNITED STATES**

v.

**Private (E–2) Jerome BLACKBURN, 551–02–0325, US Army, Company B, 3d Battalion, 5th Advanced Individual Training Brigade (Combat Support), US Army Training Center, Fort Dix, New Jersey.**

**SPCM 11728.**

U. S. Army Court of Military Review.

Sentence Adjudged 29 Aug. 1975.

Decided 14 July 1976.

Appellate Counsel for the Accused: CPT Buren R. Shields, III, JAGC; CPT John R. Osgood, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT William C. Kirk, JAGC; MAJ Steven M. Werner, JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

DeFORD, Judge:

At a trial before a military judge sitting as a special court-martial, the appellant, contrary to his pleas, was found guilty of forgery in violation of Article 123, Uniform Code of Military Justice (10 U.S.C. § 923) and received the approved sentence set forth above.

Appellant alleges, among other things, that (1) the military judge abused his discretion and departed from an impartial role as a trier of fact in violation of paragraph 54b, Manual for Courts-Martial, United States, 1969 (Revised edition), when he determined a fundamental infirmity in the Government's case and called a witness to cure that infirmity; and, (2) the Government failed to prove the charge in that there was no evidence of false alteration because there was no showing of lack of authority and consequently no intent to defraud.

The charge of forgery consisted of eight specifications. The first two specifications were founded upon falsely altering travelers checks and the remaining six specifications were based upon uttering falsely altered travelers checks. The eight specifications involved only six travelers checks.

The six checks in question were issued by the American Express Company and had been sold to a soldier named James Philyaw. The appellant negotiated three of the checks to the Post Exchange at Fort Dix, New Jersey and the three remaining checks were negotiated to the Fort Dix NCO Club. The appellant signed his own name to all six checks in the signature and countersignature spaces on the instruments. He cashed the checks for money, goods and services. However, payment was refused by the correspondent bank which resulted in an investigation. During the investigation, the appellant was questioned concerning the checks in issue. After appropriate warnings, the appellant gave a sworn statement in which he stated that he found the

travelers checks and that the checks had writing on them which he erased. He admitted cashing the checks.

At trial, the Government did not introduce any evidence of ownership concerning the checks notwithstanding the allegations contained in the specifications that appellant had erased the name of one James Philyaw on Prosecution Exhibit's 1 and 2 and that he uttered the six checks knowing they had been falsely altered and would if genuine operate to the legal prejudice of another.

After both sides had rested, the military judge commented that he would like to know the present location of James Philyaw. The trial counsel stated that Philyaw had been transferred to Fort Rucker, Alabama and was not available. The military judge then commented that there was no evidence of ownership of the checks. The Court then recessed until the following day. During the recess, the military judge directed that a Mr. Harmon, the local manager of the American Express Company be called as a witness for the court. Over the objection of the individual defense counsel, Mr. Harmon testified that the checks in question were sold to one James Philyaw. In addition, he stated that James Wesley Philyaw filed a claim for $140.00. The claim form filed stated that the checks had been locked in Philyaw's wall locker and "disappeared" therefrom during the night of May 2, 1975, and that the checks had been signed by Philyaw in the upper left-hand corner. The claim form was introduced and admitted into evidence without objection.

I

The Manual [1] authorizes the Court to call additional witnesses when, in its discretion, it determines the evidence is insufficient for a proper determination of the matter before it or when the Court is not satisfied that it has received all available admissible evidence on an issue before it.

It is well settled in military law that the trial judge is not a mere umpire in the contest between the Government and the accused. He can go beyond ruling on the admissibility of disputed items of evidence and ask questions to clear up uncertainties in the evidence or to develop further the facts for the better understanding of the court-martial. However, he cannot lay aside impartiality, and become an advocate for one side or the other.[2]

Judicial concern arises only when the nature and extent of the interrogation clearly evidences that the inquirer abandoned his role as an impartial, unbiased fact finder to become a partisan and biased advocate seeking and aiding in a conviction.[3]

Also, even though the parties have rested, the court may interrupt its deliberations and request witnesses be called to provide sufficient evidence for the court to arrive at a just decision.[4]

---

1. Paragraph 54*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), provides as follows:

   "Responsibility of the court. The court is not obliged to content itself with the evidence adduced by the parties. When that evidence appears to be insufficient for a proper determination of the matter before it or when not satisfied that it has received all available admissible evidence on an issue before it, the court may take appropriate action with a view to obtaining available additional evidence. The court may, for instance, require the trial counsel to recall a witness, to summon new witnesses, or to make an investigation or inquiry along certain lines with a view to discovering and producing additional evidence. In doing so, however, the court must be careful not to depart from an impartial role. The right of the members to cause the recall of a witness or to call for additional evidence is subject to an interlocutory ruling by the military judge or the president of a special court-martial without a military judge as to the the propriety therefor."

2. *United States v. Jordan,* 45 C.M.R. 719 (A.C. M.R.1972); *United States v. Bishop,* 11 U.S.C. M.A. 117, 28 C.M.R. 341 (1960); *United States v. Kennedy,* 8 U.S.C.M.A. 251, 24 C.M.R. 61 (1957).

3. *United States v. Lindsay,* 12 U.S.C.M.A. 235, 30 C.M.R. 235 (1961); *United States v. Berry,* 6 U.S.C.M.A. 638, 20 C.M.R. 354 (1956).

4. *United States v. Parker,* 7 U.S.C.M.A. 182, 21 C.M.R. 308 (1956); *United States v. Turkali,* 6 U.S.C.M.A. 340, 20 C.M.R. 56 (1955).

■ We do not believe that the trial judge abused his discretion in calling an additional witness under the circumstances of this case.

Here, the military judge was acting as the finder of fact and law. The evidence which had been presented at the time both parties to the trial rested their cases certainly implied that a representative of the issuing company could provide some relevant testimony concerning the issues before the court. The trial judge left the primary portion of the questioning to counsel. We find nothing improper in the manner he conducted this portion of the trial.[5] The nature of the evidence provided by the witness was raised by other admissible evidence presented to the court and was required for a proper determination of the issues. Accordingly, we find no error.

## II

■ Turning to the remaining assignment of error, appellate defense counsel assert, as heretofore noted, that the Government failed to produce any evidence concerning false altering, e. g., lack of authority and consequently there was no evidence of intent to defraud.

The alleged failure of proof does constitute two of the required elements of the offense of forgery under the Uniform Code of Military Justice.[6] There appears to be a paucity of precedent concerning forgery of travelers checks in the military system. For that reason, we will treat the subject in some depth.

Travelers checks have special attributes and functions and are anomalous instruments and as such are *sui generis.* They differ from ordinary checks in that they are sold by banks and express companies and require both a signature as well as a countersignature by the purchaser. They generally are considered, upon purchase, to constitute a sale of credit and have the characteristics of a cashier's check issued by a bank, and are foreign bills of exchange.[7]

A travelers check in the exact form in which it was transmitted by the issuing express company to a bank or other agency for sale to its customers, bearing the signature of the treasurer of the express company but with no signature of the purchaser, name of a payee, or countersignature of a purchaser is not a negotiable instrument. However, where the form of the check has been filled in and the signature and countersignature in the space for signing by the purchaser or holder corresponds, the instrument is negotiable under the Uniform Commercial Code.[8]

Travelers checks are cashed, not upon the credit of the person negotiating them but upon the credit of the issuer and the correspondence of the endorsement of the negotiator with the signature on the face of the instrument. Therefore, the first negotiator of such checks, if not the person to whom the checks were issued, is necessarily a forger.[9]

The thrust of appellant's argument appears to be directed to the allegation that the Government failed to prove beyond a reasonable doubt that the appellant lacked authority to cash the travelers checks.

The Government introduced into evidence the pretrial statement of the appellant. In

5. It should be noted that upon recognizing the weakness in his case, the trial counsel moved for a continuance for the purpose of securing Philyaw as a witness. The military judge summarily denied the motion.

6. *See* Change I, Department of the Army Pamphlet 27–9, dated 22 October 1969; The Military Judge's Guide, paragraphs 4–93 and 4–94 at pages 4–107, 4–109, 4–110 and 4–111.

7. *See* Am.Jur.2nd Ed., Bills and Notes, § 17.

8. *See* Anderson's, Uniform Commercial Code, § 3–104–21 at page 614; 11 Am.Jur.2nd Ed., Bills and Notes, § 209; 42 A.L.R.3d 846 (1972).

9. *Berry v. United States,* 5 Cir., 271 F.2d 775 (1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 612, 4 L.Ed.2d 555 (1960); *see also United States v. Jackson,* 13 U.S.C.M.A. 66, 32 C.M.R. 66 (1962). The latter case deals with forgery of money orders, an instrument possessing similar characteristics to travelers checks.

this statement the appellant admitted finding the travelers checks outside the post exchange. He also admitted erasing the writing at the top of the checks, inserting his own name, and then signing his name on the countersignature line at the time he cashed the checks.

There was no direct evidence that the original purchaser had signed the checks. The only evidence before the Court concerning the original purchaser or current ownership of the checks was that adduced from the manager of the American Express Company. This witness testified that the checks were sold to one Philyaw. Philyaw's claim was introduced into evidence. This form indicated that the checks had disappeared from Philyaw's locker and that Philyaw had signed the checks at time of purchase. The Government's document examiner established that the checks which were the subject of the charges contained erasures of a name at the signature lines. Also, this witness corroborated the appellant's statement that he had signed his own name in the signature and countersignature lines of the six checks.

We believe there was sufficient evidence before the Court to establish beyond a reasonable doubt that the appellant did not have any lawful authority to possess or cash the checks in issue before us, nor were they negotiable at that point of time. Consequently, we are satisfied beyond a reasonable doubt that the appellant falsely altered and then uttered the instruments in question and negotiated them for value with the intent to defraud Philyaw of his right to the use and benefit of the line of credit contained in the traveler's checks.

The other assignments of error have been considered and are deemed to be without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge BAILEY and Judge COOK concur.