UNITED STATES, Appellee

v.

Daniel G. BANFIELD, Staff Sergeant
U.S. Army, Appellant.

No. 67,759.
CMR No. 9001833.

U.S. Court of Military Appeals.

Argued Dec. 1, 1992.
Decided Aug. 18, 1993.

For Appellant: *Captain Beth G. Pacella* (argued); *Colonel Robert B. Kirby* and *Captain Michael J. Berrigan* (on brief); *Captain Michael P. Moran.*

For Appellee: *Captain Robert J. Walters* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg, Major Joseph C. Swetnam* (on brief).

**326**

SULLIVAN, Chief Judge:

On June 14, 1990, appellant was tried by a general court-martial at Taylor Barracks, Mannheim, Germany. Pursuant to his pleas, he was found guilty of forgery of about $2,000.00 worth of travelers checks and false swearing, in violation of Articles 123 and 134, Uniform Code of Military Justice, 10 USC §§ 923 and 934, respectively. He was sentenced by a military judge sitting alone to a bad-conduct discharge, confinement and forfeiture of $300.00 pay per month for 2 years, and reduction to Private E1. On July 24, 1990, the convening authority approved this sentence, except for confinement and forfeitures in excess of 18 months. On November 12, 1991, the Court of Military Review affirmed the approved findings and sentence in an unpublished opinion.

This Court granted review on the following issue of law:

> WHETHER APPELLANT'S PLEAS OF GUILTY TO FORGERY WERE IMPROVIDENT BECAUSE HIS CONDUCT IN COMPLETING AND NEGOTIATING BLANK TRAVELERS CHECKS DOES NOT, AS A MATTER OF LAW, MEET THE ELEMENTS OF THE OFFENSE OF FORGERY. 36 MJ 38.

We hold that his pleas of guilty were provident. *See United States v. Jackson*, 13 USCMA 66, 32 CMR 66 (1962); *cf. Ashford v. Thos. Cook and Son (Bankers) Ltd.*, 52 Haw. 113, 471 P.2d 530 (1970).

The factual background for appellant's guilty pleas was set forth by the Court of Military Review as follows:

> While strolling around a military community post-exchange complex in Berlin, the appellant walked by a street sweeper who appeared to be sweeping up, among other items, checks. The appellant stopped, examined the documents, found them to be blank travelers checks, and ultimately collected forty of them. [The checks were lost by the daughter of a United States Air Force member (Ms. Murphy). Her failure to sign each of the checks upon purchase resulted in American Express' refusal to honor her claim for a refund.] The appellant's first "instinct" was to return them to the nearby Merchant's National Bank but because it "didn't look like it was open," the appellant put them in his pocket. Being generally familiar with travelers checks, he proceeded directly to two different German facilities where he negotiated all of Ms. Murphy's checks, signing a fictitious name, Peter Johnson, to thirty-nine of the checks and his own name, which ultimately was his undoing, to one. The appellant thought it was "easy money."

Unpub. op. at 2.

The court concluded that appellant's guilty pleas to forgery were valid. It declined to "delve into the sometimes arcane law of bills, notes, and negotiable instruments" in its analysis. Unpub. op. at 2. The court simply relied on the text of Article 123, the explanation of this offense in the Manual for Courts–Martial, and its earlier decision in *United States v. Blackburn*, 2 MJ 929, 932 (ACMR 1976) (holding that "the first negotiator of [travelers] checks, if not the person to whom the checks were issued, is necessarily a forger"), *pet. denied*, 2 MJ 166 (CMA 1976).

———

Appellate defense counsel in this case argues that appellant's conduct in signing a fictitious name to blank travelers checks lacked legal efficacy because it did not impose or change any legal liability or right of any person, *i.e.*, Ms. Murphy, American Express, or the two exchange centers. *See generally United States v. Hopwood*, 30 MJ 146, 147 (CMA 1990). Counsel contends that any change in legal liability had already occurred when Ms. Murphy failed to sign these checks as required by her contract with American Express. In answering this claim, the Government adopts the *Blackburn* rationale, contending that by signing the blank travelers checks, appellant precluded Ms. Murphy from enforcing her claim to the proceeds, thus prejudicially changing her legal rights.

The Court of Military Review concluded that *Blackburn* is dispositive on this issue. In *Blackburn,* the accused erased the signatures on "found" travelers checks and placed his name in their place. These acts represented a material alteration with the clear intent to defraud the true owner. In this case, however, appellant made a fictitious endorsement of the blank travelers checks, a circumstance which factually distinguishes *Blackburn* and warrants a closer inquiry on our part into the law of forgery and negotiable instruments. Moreover, we noted in *United States v. Thomas,* 25 MJ 396 (CMA 1988), that our forgery statute must be strictly interpreted, and its proper application requires a careful assessment of applicable military and civilian law.

The Article 123 forgery offense applies to any person subject to the Uniform Code who *with intent to defraud—*

(1) *falsely makes or alters any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice; or*

(2) utters, offers, issues, or transfers such a writing, known by him to be so made or altered.

(Emphasis added.)

In civilian jurisdictions, it is generally said that

forgery is the false making, with the intent to defraud, of a document which is not what it purports to be, as distinct from a document which is genuine but nevertheless contains a term or representation known to be false. The distinction is as between a document signed by a third person using the signature of another (a forgery) and a document signed by an authorized person but containing a promise known to be false that does not bear on the authenticity of the instrument (not a forgery)....

Forgery contemplates a writing which falsely purports to be the writing of another person than the actual maker. Signing one's own name with the intent that the writing be received as written by another person, or impersonating another in the signature of an instrument, or signing in such a way as to make the writing purport to be that of another, are all acts of forgery. *Similarly, the creation of a fictitious identity and the signing of the name of the fictitious person with fraudulent purpose may be considered forgery or false making.*

*United States v. Price,* 655 F.2d 958, 960 (9th Cir.1981) (citations and footnote omitted; emphasis added).

A preliminary question raised in this case is whether appellant's admissions establish an intent to defraud as required by Article 123. Long ago, Judge Ferguson expounded on this problem as follows:

The essence, however, of the offense of forgery is that they be so made with intent to defraud. *United States v. Ebarb,* 12 USCMA 715, 31 CMR 301; *United States v. Pelletier,* 15 USCMA 654, 36 CMR 152; *United States v. Caudill,* 16 USCMA 197, 36 CMR 353. And that state of mind, as applied to forgery, involves a purpose or design to deprive a person of property or something of value by trick, deceit, chicanery, or overreaching. *United States v. Leach,* 7 USCMA 388, 22 CMR 178; Black's Law Dictionary, 4th ed., page 511. It normally refers to the intent of "wronging one in his property rights by dishonest methods or schemes." *Hammerschmidt v. United States,* 265 U.S. 182, 188, 68 L.Ed. 968, 44 S.Ct. 511 [512] (1924). Under Code, *supra,* Article 123, it is not sufficient that the accused intends deceptively to impair or impede a governmental function, although such may be enough to make out the requisite fraudulent state of mind under various sections of Title 18, United States Code. *United States v. Addye,* 7 USCMA 643, 23 CMR 107; *Pina v. United States,* 165 F.2d 890 (CA 9th Cir) (1948); *Tacoronte v. United States,* 323 F.2d 772 (CA 10th Cir) (1963).

Moreover, an intent to deceive is not sufficient to establish an intent to defraud. *United States v. Wilson,* 13

USCMA 670, 33 CMR 202; *United States v. Wade,* 14 USCMA 507, 34 CMR 287. Stated differently, false making of an instrument of apparent legal efficacy, with the intent to deceive, does not make out a violation of Code, *supra,* Article 123, although the intended deception may circumstantially cast light on the ultimate purpose of the accused's acts. *United States v. Sheeks,* 16 USCMA 430, 434–35, 37 CMR 50, 54–55 (1966).

■ Intent to defraud is also an essential element of common law forgery. "The intent to defraud need not be an intent to defraud some particular person, the intent need only be a general intent to defraud and the act of forgery itself, if shown, implies such an intent." *State v. Hudson,* 793 S.W.2d 872, 879 (Mo.App.1990). *See, e.g., State v. Skorpen,* 57 Wash.App. 144, 787 P.2d 54 (1990); para. 48c(5), Part IV, Manual for Courts–Martial, United States, 1984. In the instant case, appellant admitted making a fictitious signature with an intent to make "easy money" off either Ms. Murphy, American Express, the bank, or anybody else who had legal responsibility to pay money. This purpose is sufficient to constitute an intent to defraud under the above precedent. *See generally United States v. Faust,* 850 F.2d 575, 582–83 (9th Cir.1988).

■ A second preliminary question to be considered in this case is whether appellant's admitted actions of signing a fictitious signature to blank travelers checks constituted the false making of "any signature" within the meaning of Article 123. *See generally United States v. Hagerty,* 561 F.2d 1197, 1199 (5th Cir.1977). Some jurisdictions believe that the mere use of a false or fictitious name may constitute false pretense, but so long as the writing purports to be the act of the person issuing it and of no other, there is no forgery. *See*

State *v. Harrison,* 505 So.2d 783, 792–93 (La.App. 2 Cir.1987) (forgery was not committed when authorized employee made organization checks payable to a fictitious payee to pay gambling debts; but forgery was committed when negotiating checks that were known to be forged with the intent to defraud). On the other hand, the majority view is that a "maker manipulating a fictitious identity . . . is attempting to create a separate 'person' with characteristics, personality, and a semblance of identity, and may be viewed as a forger." *United States v. Price,* 655 F.2d at 961 n.5. Military law as reflected in the broad language of Article 123 follows the majority rule. *United States v. Taylor,* 9 USCMA 596, 599, 26 CMR 376, 379 (1958). *See Hubsch v. United States,* 256 F.2d 820 (5th Cir.1958). Accordingly, this element of forgery was also lawfully established by appellant's pleas.[1]

■ The last question that must be answered is whether appellant's admissions with respect to these travelers checks pass the legal-efficacy test imposed by Article 123. *See United States v. Hopwood, supra.* Appellate counsel now contends that finding lost, blank travelers checks is equivalent to finding lost money in which the original owner's property interest had already been forfeited as a result of negligence. Thus, counsel argues that appellant's belated false signatures had no legal effect on anyone's rights. Such a comparison we find inapt, and this argument we find, at the very least, contradictory of appellant's admissions at trial. *See generally United States v. Harrison,* 26 MJ 474 (CMA 1988).

A travelers check is generally considered "an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term *T* travelers check*d* or by a substan-

---

1. Even if appellant had signed his own name to all the travelers checks, his actions might still be considered forgery. *United States v. Brown,* 417 F.2d 1068 (5th Cir.1969), *cert. denied,* 397 U.S. 998, 90 S.Ct. 1140, 25 L.Ed.2d 407 (1970); *United States v. Franco,* 413 F.2d 282 (5th Cir.), *cert. denied,* 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87

(1969). The Circuits have taken different approaches to resolving this issue. *See, e.g., United States v. Hagerty,* 561 F.2d 1197 (5th Cir. 1977). *Contra Filor, Bullard & Smyth v. Insurance Co. of North America,* 605 F.2d 598 (2d Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1506, 59 L.Ed.2d 776 (1979).

tially similar term, and (iv) requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the instrument." Uniform Commercial Code [UCC] § 3–104(i) (Official Text 1990). The nature of a travelers check is that it is an incomplete instrument "drawn upon the credit of the issuer." *See* Hawkland, *American Travelers Checks* (hereafter Hawkland), 15 Buffalo L.Rev. 501, 514–16 (1966). A travelers check also can be a negotiable instrument within the meaning of UCC § 3–104 when it is a signed writing that orders or promises payment of money. "Money" does not satisfy either definition. *Cf. Ashford v. Thos. Cook and Son (Bankers) Ltd.*, 52 Haw. 113, 471 P.2d 530 (1970). " 'Money' means a medium of exchange authorized or adopted by a domestic or foreign government and includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more nations." UCC § 1–201(24).

The guilty-plea inquiry indicates that the travelers checks in this case were unsigned and, thus, nonnegotiable until appellant found and signed them. *See* UCC § 3–104(a). *See generally Fazi v. United States*, 935 F.2d 535, 539 (2d Cir.1991). Appellant then became the holder of the travelers checks even though he used a fictitious signature. Any person in possession of an instrument where the person identified as payee is a fictitious person is its holder. UCC § 3–404(b).

■ Appellant, however, by his own admission was not a holder in due course and was not permitted to take these instruments free from defenses of Ms. Murphy. *Cf. Ashford v. Thos. Cook and Son (Bank-*

*ers) Ltd., supra.* Specifically, by finding these instruments and knowing they belonged to a person whose identity could be readily determined, he did not take them (i) for value or (ii) in good faith. Accordingly, appellant's signing of a fictitious name was an obvious attempt to foreclose any subsequent legal claim against him by the original owner for these lost instruments or their proceeds. *See* UCC §§ 3–302, 306, and 309; *cf. Hawkland, supra. See generally United States v. Kantner*, 11 USCMA 201, 203, 29 CMR 17, 19 (1960); *United States v. Sims*, 5 USCMA 115, 119, 17 CMR 115, 119 (1954).

■ Finally, appellant's action of signing and then countersigning the blank travelers checks with a fictitious name precluded Ms. Murphy from exercising her contractual right to recover the proceeds of these checks from the issuer, American Express. *See Berry v. United States*, 271 F.2d 775, 777 (5th Cir.1959), *cert. denied*, 362 U.S. 903, 80 S.Ct. 612, 4 L.Ed.2d 555 (1960). Absent both these signatures, a reasonable inference can be drawn that she might have been able to recover the checks or their proceeds if they had been returned unnegotiated to American Express.[2] Thus, the final extinguishment of contractual liability clearly is a change of legal rights within the meaning of Article 123. *See also United States v. Jackson*, 13 USCMA 66, 32 CMR 66 (1962). Accordingly, appellant's admissions in this case properly establish his guilt of forgery.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

---

2. Appellant pleaded guilty in this case and admitted the legal efficacy of his false signatures. No discussion occurred during the providence inquiry on the precise contractual relationships involved. Accordingly, he waived any question concerning Ms. Murphy's right to recover possession of these checks under the contract or under the law of Germany or any other jurisdiction. *Cf. United States v. Thomas*, 25 MJ 396, 402 n.5 (CMA 1988).