ERDMANN, Judge
(dissenting):
The majority concludes that McKeel is not entitled to de facto transactional immunity because it finds that appropriate remedial actions have been taken and that McKeel has not demonstrated detrimental reliance. As I conclude that the concept of detrimental reliance is not a proper element in a de facto immunity analysis, I would conclude that McKeel had been granted de facto transactional immunity, that he was entitled to enforcement of that promise, and that the Government was barred from bringing a subsequent prosecution against him. I therefore respectfully dissent.
The facts in this case are straightforward. While attending an initial training school, McKeel was suspected of the rape and sexual assault of a female recruit. During a subsequent interview with the Office of Special Investigations (OSI), McKeel made a number of incriminating statements. Sometime after the OSI interview, Chief Petty Officer (CPO) Leiker, the chief legal officer, told McKeel and his parents that if he accepted nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815 (2000), and waived an administrative discharge board, he would not be court-martialed. McKeel accepted nonjudicial punishment under Article 15 and waived an administrative discharge board. McKeel was not provided the opportunity to consult with a judge advocate prior to accepting the offer. See Dep’t of the Navy, Manual of the Judge Advocate General § 0109a.(l). All of these actions were approved by the special court-martial convening authority (SPCMCA). However, when McKeel’s discharge package was received by the general court-martial convening authority (GCMCA), that officer declined to approve the administrative discharge and initiated steps resulting in a charge for rape being referred to a general court-martial.
McKeel filed a motion to dismiss on the grounds that he had received de facto immunity from CPO Leiker. Following an Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2000), session, the military judge denied the motion to dismiss on the ground that under Rule for Courts-Martial (R.C.M.) 704, immunity is within the sole discretion of the GCMCA. McKeel and his parents testified that they believed CPO Leiker had the authority to inform McKeel that if he accepted nonjudicial punishment under Article 15 and waived his right to an administrative discharge board he would not be court-martialed. That testimony is uncontroverted. Although the military judge stated that he was not convinced that CPO Leiker had apparent authority, he found that McKeel’s mother believed that CPO Leiker had the authority.[1] At the general court-martial, McKeel entered a plea of guilty to indecent assault and was sentenced to five years of confinement, reduction to E-1, forfeiture of all pay and allowances and a dishonorable discharge. Pursuant to a pretrial agreement the convening authority suspended that portion of the sentence in excess of fifteen months for a period of fifteen months.
The majority opinion recognizes the concept of de facto immunity and creates a test to determine when a military judge may fashion appropriate relief for promises of immunity made by a person without actual authority: “(1) a promise of immunity was made; (2) the accused reasonably believed that a person with apparent authority to do so made the promise; and (3) the accused *86 relied upon the promise to his or her detriment.” While the concept of detrimental reliance has sometimes been referenced in this court’s immunity jurisprudence, I believe that the concept is misplaced in the de facto immunity context. Consequently, a review of immunity in military justice is warranted.
United States v. Thompson, 11 C.M.A. 252, 255, 32 C.M.R. 68, 71 (1960), and United States v. Caliendo, 13 C.M.A. 405, 409, 32 C.M.R. 405, 409 (1962), were decided under para. 148e of the Manual for Courts-Martial, United States (1951 ed.).[2] In those cases individuals who did not have general court-martial convening authority informed suspects that no action would be taken against them if they either returned stolen property or testified about a theft.[3] This court held in both cases that there was no valid grant of immunity because the individuals purporting to make the grant did not have the requisite authority. In both cases, however, the court held that if the defendants had incriminated themselves in reliance on the defective promises, incriminating evidence or statements would not be admissible. Thus, while recognizing de jure immunity and enforcing the voluntariness of pretrial statements, the court did not raise the issue of de facto immunity and made no conclusions in that regard.
This court issued a splintered decision in Cooke v. Orser, 12 M.J. 335 (C.M.A.1982), under para. Q8h of the Manual for Courts-Martial, United States (1969 rev. ed.) (1969 MCM).[4], In that case the appellant argued that the staff judge advocate to the commander of the Strategic Air Command promised him immunity from prosecution if he provided a statement and took a polygraph test. The lead opinion found that the promises made by the staff judge advocate led Cooke to believe that if he cooperated he would not be court-martialed by military authorities. Cooke, 12 M.J. at 342. Finding that an accused “need not gamble on the integrity of prosecutorial authorities in the military justice system,” the lead opinion held that Cooke’s due process rights had been violated. Id. at 343.
Chief Judge Everett’s concurring opinion relied upon the immunity provisions of paragraph 68h of the 1969 MCM. He concluded that while the staff judge advocate did not have authority to grant immunity, the subsequent actions of the GCMCA ratified his grant of immunity. Id. at 354 (Everett, C.J., concurring). The dissent of Judge Cook found that only the GCMCA had the power to grant immunity and it was not enough that the accused may have reasonably believed that he had been granted immunity. Id. at 365 (Cook, J., dissenting). While the lead opinion hinted at the concept of de facto immunity, it was not specifically raised or discussed in the opinion.
Rule for Courts-Martial 704, Manual for Courts-Martial, United States (1984 ed.) (1984 MCM), recognized both transactional and testimonial immunity and provided that immunity could only be granted by a GCMCA.[5] The 1984 MCM, in the discussion to R.C.M. 704(e), recognized for the first time the concept of de facto immunity. Case law too began to explicitly recognize the concept. In United States v. Churnovic, 22 M.J. 401, 402-03 (C.M.A.1986), a chief petty officer informed a crew member that he would not be punished if he gave information about or *87 turned in drugs. The court stated: “if he was promised immunity from prosecution for possessing hashish in return for revealing its location and if he provided the requested information, he is entitled to the benefit of that promise.” Id. at 407. In United States v. Kimble, 33 M.J. 284, 289-90 (C.M.A.1991), the court held that a promise made by a SPCMCA not to prosecute if Kimble completed a treatment program for child abusers constituted a grant of transactional immunity. Both of these cases recognized the concept of de facto immunity where a promise not to prosecute was made by someone with apparent authority.
In Cunningham v. Gilevich, 36 M.J. 94, 100-01 (C.M.A.1992), the court recognized that it had applied some type of de facto immunity since Cooke, but found that the petitioners in that case had not established that the officer who offered the immunity had done so with apparent authority.[6] In Samples v. Vest, 38 M.J. 482, 486-87 (C.M.A. 1994) the court again recognized the concept of de facto immunity, but held it was not applicable where the appellant had not shown that he had been misled.
From these cases it is clear that de facto immunity is a well-established principle of military law despite the clear language of R.C.M. 704(c).[7] What is not so clear is the l’elationship to “detrimental reliance” and how de facto immunity is applied to transactional immunity as opposed to testimonial immunity—two very different concepts.
Rule for Courts-Martial 704(a) recognizes two types of immunity: transactional immunity, which bars future prosecutions, and testimonial immunity, which allows future prosecutions but bars the use of immunized testimony at the trial. De facto immunity has different applications to these different types of immunity. If there is a finding of de facto transactional immunity, then there can be no prosecution, as the appellant is entitled to have the promise of transactional immunity enforced. Samples, 38 M.J. at 487. The issue of detrimental reliance and the requirement for independent evidence to support a subsequent prosecution do not arise because a grant of transactional immunity means that there will be no subsequent prosecution.
Where there is a finding of de facto testimonial immunity, the Government can proceed with a prosecution but has the burden of establishing that all evidence was obtained independently from the immunized testimony. Kastigar v. United States, 406 U.S. 441, 461-62, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). If, however, there is a finding that there is no de facto testimonial immunity, the court will go on to examine whether the statements or evidence derived from the alleged immunity process are otherwise admissible. Cunningham, 36 M.J. at 101-02 (unlawful inducements and influences in obtaining statements may nonetheless give rise to Article 31, UCMJ, 10 U.S.C. § 831 (2000), issues).
I agree with the first two criteria suggested by the majority for determining whether de facto immunity exists: an accused must honestly and reasonably believe that (1) a promise of immunity was made; and (2) the promise was made by a person with apparent authority to do so. Jones, 52 M.J. at 65; Samples, 38 M.J. at 487. In this case there is no dispute that CPO Leiker promised McKeel immunity if he accepted nonjudicial punishment under Article 15 and waived his right to an administrative discharge board— both of which he did. McKeel was a young seaman attending his initial training. Chief Petty Officer Leiker was the chief legal officer and was the face of the naval military justice system to both McKeel and his parents. The undisputed testimony discloses that CPO Leiker held himself out to have the authority to promise that McKeel would not be prosecuted if he undertook the required action. A reasonable observer would conclude that a new E-2 would not question the *88 authority of a chief petty officer who is also the highest ranking legal officer in his unit. The military judge erred in concluding that CPO Leiker did not have the apparent authority to grant immunity. That finding is not supported by the evidence, is directly contrary to the undisputed testimony, and conflicts with other findings by the military judge.
I disagree with the majority that detrimental reliance has any place in the de facto immunity analysis. Detrimental reliance in this context appears to have migrated from R.C.M. 705(d)(4)(B), which lists the conditions under which a convening authority can withdraw from a pretrial agreement. Among these conditions is a withdrawal before an accused begins performance of promises contained in the agreement. This condition came from Shepardson v. Roberts, which held that a convening authority will be bound to a pretrial agreement if the accused has detrimentally relied on the agreement. 14 M.J. 354, 358 (C.M.A.1983).
Rule for Courts-Martial 705 is not applicable to this case, nor will it be applicable in most cases involving a grant of de facto immunity. There was no pretrial agreement between McKeel and CPO Leiker or McKeel and the SPCMCA because McKeel was not being referred for a court-martial.[8] See R.C.M. 705(b) (concerning the nature of a pretrial agreement). There was a promise from CPO Leiker to McKeel that he would not be prosecuted if he accepted nonjudicial punishment under Article 15 and waived an administrative discharge board, but that does not rise to the level of a pretrial agreement. Rather, upon fulfillment of the two conditions imposed by CPO Leiker’s promise, McKeel was entitled to enforcement of this de facto transactional immunity. And where the promise constitutes de facto transactional immunity it is not adequate simply to ensure immunized statements are not used in a subsequent prosecution, the very existence of which violates the terms of the immunity.
I conclude that CPO Leiker, an officer with apparent authority, promised McKeel transactional immunity if he accepted nonjudicial punishment under Article 15 and waived his right to an administrative discharge board. McKeel did both and now it is time for the Government to honor its promise. The importance in enforcing such grants of immunity was emphasized by Chief Judge Everett in Cooke as follows:
where, as here, the stakes are high, a suspect who has been asked for information—and his lawyer—must know that a promise of immunity which is given by a staff judge advocate possessing all the in-dicia of apparent authority and is reasonably relied on by the suspect will thereafter be judicially enforced. Otherwise, lips will remain sealed when it is vital to national security that they be unlocked. Although in this case an officer who may well have been a spy and traitor will escape military prosecution, it still is in the national interest that the promise of immunity be enforced.
Cooke, 12 M.J. at 358 (Everett, C.J., concurring) (footnotes omitted).
Those involved in government understand the numerous governmental departments and levels of authority; but to the average citizen, the government is the government and the left hand should not be able to take away what the right hand has properly granted.[9] I would therefore reverse the findings and sentence and dismiss the charges.

. The military judge did not make any specific findings regarding McKeel or his stepfather. It was apparent from the record that since he believed that only the general court-martial convening authority (GCMCA) could grant immunity, that line of testimony was not relevant.

. That provision dealt with the interest or bias of a witness and authorized a GCMCA to grant testimonial immunity.

. The other case relied upon by the majority in this analysis, Shepardson v. Roberts, 14 M.J. 354, 358 (C.M.A.1983), has nothing to do with immunity but rather is a case in which the convening authority withdrew from a pretrial agreement and the issue in the case was whether the withdrawal was proper. The court held that a convening authority was bound to the agreement if the accused had relied on the agreement to his detriment.

. Cooke was charged with espionage for providing information and materials to the Soviet Union. The three-member court produced three separate opinions. Judge Fletcher wrote the lead opinion, Chief Judge Everett concurred and Judge Cook dissented. Paragraph 68h authorized a GCMCA to grant transactional immunity.

. Only minor changes, none pertinent to this discussion, have been made to Rule for Courts-Martial 704 since the adoption of the 1984 MCM.

. Concluding that there was no transactional immunity, the court went on to hold that under the "unlawful influence” provision of Article 31(d), the Government had the burden of establishing that any evidence used to prosecute the petitioner was independent of testimony derived from the immunity offer. Cunningham v. Gilevich, 36 M.J. 94, 102 (C.M.A.1992).

. Only a GCMCA authority may grant immunity, and may do so only in accordance with this rule.

. As noted in United States v. Jones, 52 M.J. 60, 65 (C.A.A.F.1999), "A de facto grant of immunity arises when there is an after-the-fact determination based on a promise by a person with apparent authority to make it that the individual will not be prosecuted.” With an "after-the-fact” determination, rarely, if ever, will a formal pretrial agreement be involved.

. "I join Judge Fletcher in concluding that the Government cannot improve its legal position because its left hand did not know what its right hand was doing." Cooke v. Orser, 12 M.J. 335, 354 (C.M.A.1982) (Everett, C.J., concurring).