**Frank DENNY**

v.

**Gerard V. CAREY et al.**

**Civ. A. No. 76–259.**

United States District Court,
E. D. Pennsylvania.

Feb. 22, 1977.

Emanuel G. Weiss, Philadelphia, Pa., Irving Bizar, Demov, Morris, Levin & Shein, New York City, for plaintiff.

Robert W. Sayre, James G. Rosenberg, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendants Carey, Bunting, Bodine and First Pennsylvania Corp.

Joseph W. Swain, John W. Frazier, IV, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant Peat, Marwick, Mitchell & Co.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff, Frank Denny, a purchaser of First Pennsylvania Corp. ("First Penn") securities, brings this action alleging violation of Sections 10(b) and 20 of the Securities Exchange Act of 1934, and the rules and regulations promulgated thereunder by the SEC.[1] Denny seeks to represent "all persons (other than defendants and their associates) who purchased securities of First Penn [from January 1, 1974 to January 28, 1976] * * * in reliance, directly or indirectly, upon false and fraudulent statements filed and circulated by defendants * * *, and who sold, or retained said securities to their loss." Plaintiff has moved for a class action determination pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3). We will certify the class.

This case is well suited to class action treatment. Indeed, defendants have not challenged and we accept plaintiff's showing of conformity with 23(a)(1), (a)(2), (a)(3) and (b)(3). However, defendants do challenge the adequacy of Denny's representation of the class.[2]

Rule 23(a)(4) requires that the representative party "fairly and adequately protect the interests of the class." Defendants contend that Denny is not a proper or adequate class representative. They charge that he is not a typical investor who believes he has been damaged by reason of a securities fraud. They point out that plaintiff owns only ten shares of stock for which he paid $16 per share and that plaintiff has had numerous opportunities to sell the ten shares at a profit, or at least without a loss.[3] Defendants contend that Denny has failed to explain at what point and why he began to be dissatisfied with his stock.[4] Defendants question Denny's motives in bringing such a lawsuit when plaintiff ap-

---

1. The facts of this case are more fully described in our opinion denying defendants' motions to dismiss and for a more definite statement. *See Denny v. Carey*, 72 F.R.D. 574 (E.D.Pa.1976).

2. Defendants also challenge certification on the ground that the complaint is vague and conclusionary and lacking in factual support. This argument must be rejected in light of our previous opinion, *Denny v. Carey*, 72 F.R.D. 574 (E.D.Pa.1976), finding the complaint to be adequate.

3. Denny purchased his stock on January 15, 1975. Throughout July and August of 1975, the stock price ranged from a weekly average low of $16.10 to a weekly average high of $20.55. On the day this complaint was filed, the price ranged from a low of $16 to a high of $16.75. Affidavit of Karen Brancheau.

4. Except where otherwise specified, factual statements herein are based on plaintiff's deposition.

pears to have a mere $160 stake and no loss, but has stated that he is prepared to spend up to half a million dollars to protect his interest. In further support of their argument that plaintiff must have an undisclosed interest in bringing this suit, defendants point out that eleven days after the commencement of the suit, Denny, represented by the same counsel as in this case, brought a similar action with similar allegations against Chase Manhattan Corp. ("Chase"), a corporation in which he holds 15 shares of stock. *Denny v. Barber*, 73 F.R.D. 6 (S.D.N.Y.). Defendants assert that plaintiff has inadequately explained how he came to choose his counsel. Pl. Ans. No. 6 to Interrog. Set # 1.

Defendants contend that Denny's purchases of First Penn and Chase stock differ from his usual investment practice. As of May 14, 1976, plaintiff owned securities in approximately 12 to 15 companies. He owned "quite substantially more" than 100 shares in each of these companies with the exception of First Penn, Chase and one private company. Denny's investments are usually chosen by his stockbroker, Melvin Seiden, without plaintiff's approval. However, Denny claims to have purchased the First Penn stock solely on his own initiative after reading about bank stock investments and seeing an analyst report about First Penn and a First Penn financial report. Defendants make much to do over plaintiff's inability to specify precisely what reports he saw, and on his alleged failure to settle on one firm investment rationale for the purchase. From the time he purchased First Penn securities, Denny received no reports or proxy statements from First Penn because all materials were sent to the custodian of his account. Plaintiff never requested that these materials be sent to him directly and does not recall whether he in fact saw any financial reports of First Penn since his purchase.

Defendants point out that securities litigation is not new to Denny. In addition to the present suit and the action against Chase, Denny also brought a shareholders suit against Minnie Pearl Corp. *See Denny v. Performance Systems, Inc.*, [1972 Trans. Binder] CCH Fed.Sec.L.Rep. ¶ 93,387 (M.D. Tenn.1973). A related suit was brought against the accountants for Performance Systems, Inc., Price Waterhouse & Co., by Murray Seiden and Kate Seiden. *See Seiden v. Price Waterhouse & Co.*, 327 F.Supp. 1325 (S.D.N.Y.1971). Murray Seiden is the father of Denny's stockbroker, Melvin Seiden, and a friend of Denny. Murray Seiden also filed a derivative suit against Chase a couple of weeks after Denny filed his suit against Chase. *See Seiden v. Willard C. Butcher*, 76 Civ. Action 666 (S.D.N.Y.).

■ Defendants, in essence, attack plaintiff's motives in bringing this suit and question the adequacy of a single representative who has a small stake and has allegedly suffered no loss and who is involved in other securities litigation. The standards of Rule 23(a)(4) are met if it appears that the named plaintiff's interests are not antagonistic to other members of the class and plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation. *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Santiago v. City of Philadelphia*, 72 F.R.D. 619 (E.D.Pa.1976); *Chevalier v. Baird Savings Ass'n*, 72 F.R.D. 140, 144 (E.D.Pa.1976).

Thus far, plaintiff has vigorously pursued this action. After reading Denny's deposition, we feel that he is an indignant purchaser who is prepared to make all the necessary efforts to remedy what he believes to have been a great injustice. Plaintiff has agreed to bear the costs of the litigation and has retained the firm of Demov, Morris, Levin & Shein as counsel. The firm has had a great deal of experience in securities litigation and has been appointed lead or general counsel in other securities class actions. Affidavit of Irving Bizar. The briefs we have received from plaintiff's attorneys thus far further support the fact that counsel is well qualified and able to conduct the litigation.

■ Defendants contend that Rule 23(a)(4) has not been complied with because there is only one named plaintiff and his holdings are small. But that is not determinative as to whether the plaintiff will fairly and adequately protect the interests of the class. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–63 (2d Cir. 1968); *Feder v. Harrington,* 52 F.R.D. 178, 182 (S.D.N.Y. 1970); *Epstein v. Weiss,* 50 F.R.D. 387, 391 (E.D.La.1970); *Weisman v. MCA, Inc.,* 45 F.R.D. 258, 262 (D.Del.1968). The fact that Denny is and has been involved in other litigation is irrelevant. *Lewis v. Black,* 22 F.R.Serv.2d 132, 133 (E.D.N.Y.1975).

■ We also reject defendants' argument that Denny is an inadequate representative because he has not suffered any damages. Plaintiff contends that he has suffered actual damages—he claims to have overpaid for his stock even at $16 and states that the price of the stock has not always been at $16 or above. In *Dorfman v. First Boston Corp.,* 62 F.R.D. 466 (E.D. Pa.1973), we found the two named plaintiffs to be proper class representatives despite defendants' argument that the two plaintiffs had not suffered any actual damages. We held that to require a court to determine whether the putative class representative had suffered damages before deciding a Rule 23 motion in an action for damages would necessitate a procedure for resolving the factual dispute and would, in effect, transform a class action motion into a motion for summary judgment as to the representative plaintiff's damages. *Id.* at 472–73. *See also Mersay v. First Republic Corp. of America,* 43 F.R.D. 465, 469 (S.D.N.Y.1968).

■ Finally, defendants challenge Denny's motives in bringing this action. We find no interests of plaintiff which are antagonistic to the class. As we have held before:

"Neither the personality nor motives of the plaintiffs is determinative of whether they will provide vigorous advocacy for the members of the class. * * * [P]rinciple, coupled with the hope of rectifying a claimed loss and the prospect of a substantial recovery, may be as strong a spur to vigorous prosecution as many other motivations." *Dorfman v. First Boston Corp., supra,* 62 F.R.D. at 473; *Chevalier v. Baird Savings Ass'n, supra,* 72 F.R.D. at 147.

We believe that Denny is a proper and adequate representative, but should it later appear otherwise, we will not hesitate to act pursuant to Rule 23(c) to alter or amend our class certification. As the court in *First American Corp. v. Foster,* 51 F.R.D. 248 (N.D.Ga.1970) stated:

"If at any time the Court feels that plaintiffs' representation of the class is less than adequate it is free to refuse to allow the action to continue as a class action, to require that additional plaintiffs be brought in if the action is to continue, or to use any number of other protective courses to insure adequate representation. Fed.R.Civ.Proc. 23(c)(1); *Weisman v. MCA, Inc.,* 45 F.R.D. 258 (D.C.Del. 1968). Thus, although the Court is interested in the adequacy of representation, and not the motive for such representation, should any 'ulterior' motives of plaintiffs which are inimical to their ability to adequately represent the other shareholders become manifest, the Court is free to make appropriate adjustments." *Id.* at 250.

We presently see no ulterior motives of plaintiff which are inimical to his ability to represent adequately the other purchasers.

## ORDER

AND NOW, this 22nd day of February, 1977, it is ORDERED that plaintiff's motion for class action determination be and hereby is GRANTED pursuant to Fed.R. Civ.P. 23(a) and 23(b)(3) for the class described as

All persons, other than defendants and their associates, who purchased securities of First Pennsylvania Corporation from January 1, 1974 to January 28, 1976 in reliance, directly or indirectly, upon false and fraudulent statements filed and circulated by defendants, and who sold, or retained said securities to their loss.

It is FURTHER ORDERED that counsel shall submit a proposed form of order within thirty (30) days for effecting notice to the class as required by Fed.R.Civ.P. 23(c)(2).