**Electronically Filed
Supreme Court
SCWC-13-0003500
26-APR-2018
08:08 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

SAMANTHA THERESALYN MEDEIROS,
Respondent/Plaintiff-Appellant,

vs.

BRADLEY KONG CHOY,
Petitioner/Defendant-Appellee.

SCWC-13-0003500

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0003500; CIV. NO. 11-1-2004-09)

APRIL 26, 2018

McKENNA, POLLACK, AND WILSON, JJ., WITH NAKAYAMA, J.,
DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY POLLACK, J.

In this case, which arises out of a 2007 car
collision, the circuit court refused the plaintiff's request to
instruct the jury that the plaintiff's motives in pursuing the
suit were immaterial to the merits of the negligence claim.  In

closing argument, the defendant argued at length that the plaintiff had lied about being involved in the collision in order to commit worker's compensation fraud and secure an unwarranted payout. The jury found by special verdict that the defendant was not the legal cause of the plaintiff's injuries.

On appeal, the Intermediate Court of Appeals (ICA) vacated the circuit court judgment, holding that the requested jury instruction should have been given under this court's prior precedent. We granted certiorari and further clarify the circumstances when a court is required to instruct the jury that it may not consider a plaintiff's motivation for pursuing a civil action.

In applying these principles to this case, we hold that the plaintiff's motives for bringing suit were irrelevant to both the merits of her claim and her credibility as a witness. We further hold that, in light of the evidence adduced at trial, the jury should have been instructed as the plaintiff requested. Accordingly, we affirm the ICA decision and remand the case for a new trial to be conducted in a manner consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

### A. Events Giving Rise to the Case

On January 23, 2007, Bradley Choy rear-ended a vehicle driven by Bernard Jimenez while driving in heavy traffic near

downtown Honolulu. The force of the collision pushed Jimenez's vehicle forward, causing it to impact the rear of a third vehicle driven by Jennilind Aggasid.

Samantha Medeiros testified that she was helping Aggasid transport a patient named Mary Beth Chan to a doctor's appointment at the time of the collision.[1] Aggasid operated a care home out of her residence, and Medeiros, who worked as a nursing assistant for Nursefinders,[2] had been assigned to help Aggasid care for Chan. Medeiros stated that she was sitting directly behind Aggasid in the backseat when the accident took place. Medeiros related that when the impact occurred, she was turned to the right in order to speak with Chan, who was seated in the backseat on the passenger side.

Following the collision, all three cars pulled into a nearby gas station. Medeiros testified that she then got out of the car and moved to the front seat to comfort Aggasid, who was badly disturbed by the event. Medeiros stated that, except for briefly examining the damage to the back of the car, she remained in the vehicle while waiting for the police to arrive and complete their accident report.

---

[1] Aggasid gave testimony at trial generally supporting Medeiros's version of events.

[2] Nursefinders is a staffing agency that places medical aides in the homes of its clients.

In contrast, Choy testified that the frontmost car in the collision contained two women in the front seat--one elderly and one in her teens or twenties--and a small child in the backseat.[3] Choy was unable to identify Medeiros as one of the women present in the vehicle. He related that the child, whom he described as around four years old and in diapers, was visible walking back and forth on the backseat of the frontmost car after the vehicles pulled into the gas station. He further contended that the two women attempted to conceal that the child had not been properly restrained by retrieving a car seat from the vehicle's trunk and buckling the child into it before police arrived. Medeiros and Aggasid denied that any child or car seat was present in the vehicle.

The police report on the accident specifies Aggasid as the driver of the front vehicle and states that the car contained three occupants. It does not provide names or descriptions of the other passengers. At trial, the police officer who responded to the accident, Officer Kirk Brown, gave a description of the occupants of Aggasid's vehicle. The officer testified that there were two women in the front seat,

---

[3]     Jimenez and Choy's wife, who was present in Choy's vehicle during the accident, gave testimony at trial generally supporting Choy's version of events. At the time of the accident, Aggasid was 45 and Medeiros was 25. The record does not reflect Chan's age.

which he estimated to both be in their forties or older, and a juvenile or small adult in the backseat. He stated that one of the women may have been five or ten years younger than the other, but acknowledged his assessment of the occupants' age may not have been accurate, noting that he was "not an expert at that." Officer Brown also testified that he did not observe a car seat or a child in diapers in any of the vehicles.

Medeiros testified that she began to experience pain in her lower back after the impact. The pain worsened over time, eventually leading to months of physical therapy and two surgeries. Medeiros was unable to work from January 24, 2007, to August 22, 2010. Because her injuries were determined to have arisen out of the course and scope of her employment, Medeiros was deemed eligible for worker's compensation. Upon reviewing her injuries, an independent examiner rated Medeiros at 25% impairment of the whole person. As a result, Medeiros received $153,949.75 in medical bill reimbursements and $105,356.62 in temporary and permanent disability benefits.

## B. Circuit Court Proceedings

On September 7, 2011, Medeiros filed a complaint against Choy in the Circuit Court of the First Circuit (circuit court), alleging that Choy's negligence was the legal cause of

her injuries and seeking general, special, and punitive damages.[4]
Prior to trial, Choy stipulated that he had caused the accident
and stated that only the "cause, nature and extent of any
injuries" suffered by Medeiros were left to be determined.

Based on the content of pretrial depositions, Medeiros
filed a motion in limine seeking to preclude witnesses from
testifying regarding the presence of an unrestrained child in
Aggasid's vehicle or the retrieval and installation of a car
seat from the vehicle's trunk following the accident. Medeiros
argued that the child's presence did not bear on any contested
issues and was likely to waste time and confuse the jury. She
further asserted that it would cause her unfair prejudice
because the jury was likely to have a strong, negative reaction
to allegations that a child was put in danger by a violation of
child safety laws. Choy responded that the testimony would
reflect on whether Medeiros was actually involved in the
accident, her location and position in the car when the accident
occurred, and whether Medeiros was in the course and scope of
her employment at the time of the accident and thus legitimately
entitled to the worker's compensation benefits she received.
The circuit court denied the motion, noting that it would

---

[4] The Honorable Virginia Lea Crandall presided.

6

evaluate relevance at trial in light of its understanding that "credibility is at issue always."

At trial, Medeiros first elicited testimony regarding the presence of a child or car seat in Aggasid's vehicle on direct examination of Aggasid, who denied that either was present. Both parties questioned witnesses about the child and car seat throughout the rest of the trial without drawing any relevancy-based objections. Choy's wife testified that she had wanted to inform the police that the child was not restrained during the accident so that the occupants of the car "would be aware that they always need to put the child in the child restraint seat for the safety of the child." Choy testified that he stopped his wife from relaying the information to law enforcement because he believed the occupants had "learned a lesson."[5]

Medeiros also submitted a proposed jury instruction based on this court's decision in Kobashigawa v. Silva, 129 Hawai'i 313, 300 P.3d 579 (2013), that would have informed the jury that the motives of a plaintiff in bringing a lawsuit are immaterial if the elements of a valid cause of action are

_____

[5] During his closing argument, Choy addressed the testimony of the responding police officer, who had testified that he did not see a car seat in any of the vehicles, stating, "Well, if there was no child restraint seat installed, then shame on those ladies, whoever they are."

otherwise established.[6]  Medeiros proposed that the jury be instructed that it "may not consider the Plaintiff's motives in bringing the lawsuit.  So far as the law is concerned, if the Plaintiff has made out a case on the facts, it is immaterial what her motive was."

After the parties rested, the circuit court held an in-chambers hearing to settle jury instructions.  Over Medeiros's objection, the court refused her request to instruct the jury that her motives in bringing the lawsuit were immaterial, although the court stated that it would reconsider Medeiros's request if Choy brought up the issue of motive during closing arguments.

Prior to closing argument, the court gave instructions to the jury that did not include any mention of the immateriality of Medeiros's motives for pursuing the civil action.  Choy then proceeded to make repeated reference in his closing argument to Medeiros's allegedly improper motives for bringing suit.  Among many other references, Choy characterized the collision as "[o]bviously . . . a non-event, not even a blip

---

[6]    Medeiros filed a separate bench memorandum prior to trial drawing the court's attention to the Kobashigawa decision.  Medeiros acknowledged that the deadline for filing motions in limine had passed, but she suggested that the importance of the matter warranted a sua sponte order disallowing reference to or inquiry into her motive for filing the lawsuit during the course of trial.  The record does not indicate that the circuit court issued such an order.

on the radar," but argued that Medeiros had pursued litigation anyway because "there was money to be made and a lawsuit to be found--filed because this was a car accident and it wasn't her fault." Choy also questioned the timing of Medeiros's filing of a worker's compensation claim, arguing that it indicated she had fabricated the incident for monetary gain: "Did she suddenly remember six days after the accident that she was working when the accident occurred or did she make the whole thing up to qualify for workers compensation benefits?"[7] Choy speculated that the allegedly delayed claim might be explained by Medeiros's discovery that "there are monetary limits to no-fault insurance that you don't have with workers' compensation"--a statement for which no evidence was presented at trial. Choy then implied that Medeiros's lawsuit was an attempt to hold him responsible for reimbursing the payments she received through a false worker's compensation claim: "So if Mrs. Medeiros was not in the vehicle or not working at the time, then she arguably submitted a false workers compensation claim, and if so, Mr.

---

[7] The term "work-related" first appears in Medeiros's physician's notes in an entry that corresponded with Medeiros's second visit, which occurred on January 29, 2007. The physician testified that this could indicate that he was not informed that the car accident was work related during Medeiros's initial visit on the day after the collision, January 24, 2007. However, the insurance adjuster who handled Medeiros's claim testified that Medeiros reported her injury to Nursefinders "right away," and the insurer prepared a WC-1 form documenting a work-related injury to Medeiros on January 26, 2007.

Choy should not be held responsible for reimbursing that false claim." Choy also suggested that a verdict in Medeiros's favor would be something the jury would be ashamed of because it would serve to consummate her fraudulent scheme:

> And when this case is over, each of you will be able to go home and talk about the case with your family and friends, and when you talk about the case, can you say you would be proud of a verdict of $1.2 million for this accident? Absolutely not. The only one who would be proud of such a verdict is the plaintiff because she would have accomplished exactly what she set out to accomplish the moment she informed Dr. Miscovich she was in a car accident and then convert it to a workers' compensation claim.

Following closing arguments, the court provided the general concluding jury instructions, which again did not inform the jury that it could not consider Medeiros's motives for pursuing the lawsuit. The jury returned an eleven-to-one special verdict finding that Choy's negligence was not the legal cause of injury to Medeiros. Medeiros renewed a previously filed motion for judgment as a matter of law, or, in the alternative, for a new trial. The circuit court denied the motion and entered judgment. Medeiros timely appealed.

### C. ICA Proceedings

On appeal to the ICA, Medeiros argued that the circuit court had erred by admitting irrelevant and prejudicial testimony about an unrestrained child and car seat in Aggasid's vehicle and by refusing to give a jury instruction barring consideration of Medeiros's motivation for bringing the lawsuit.

In a memorandum opinion, the ICA first considered the content of Medeiros's proposed jury instruction.[8]  Referencing this court's Kobashigawa decision, the ICA held that the instruction was a correct statement of the law.  The ICA further held that, taken in light of Choy's repeated allegations that Medeiros's lawsuit was brought as part of a scheme to commit worker's compensation fraud, the circuit court's failure to give the instruction was "prejudicially insufficient."

The ICA then turned to the admissibility of testimony regarding the unrestrained child and the retrieval and installation of a car seat in the backseat of Aggasid's vehicle. The appellate court considered Medeiros's contention that the testimony was irrelevant under Hawaii Rules of Evidence (HRE) Rule 401 (1993) and HRE Rule 402 (1993).  The ICA stated that the evidence of the unrestrained child and the car seat was being used to show alleged worker's compensation fraud and thus related to Medeiros's motives for bringing suit.  The court explained that, under Kobashigawa, evidence of Medeiros's motives was inadmissible substantively or to impeach Medeiros's credibility as a witness.  The ICA therefore held that the testimony was not relevant to disprove Medeiros and Chan's

---

[8]     The ICA's memorandum opinion is available at Medeiros v. Choy, CAAP-13-0003500, 2016 WL 3408046 (App. June 16, 2016) (mem.).

presence in the car at the time of the accident in order to undermine Medeiros's worker's compensation claim.

The ICA also held, however, that the testimony did have a tendency to prove or disprove Medeiros's position within the car at the time of the accident. This was relevant to the issue of causation, the ICA concluded, because expert testimony had indicated that the location and direction of Medeiros's body affected her likelihood of injury from the impact.

Notwithstanding the relevance of the evidence under HRE Rule 401, the ICA held that the circuit court had abused its discretion by admitting the testimony because, under HRE Rule 403 (1980), its probative value was substantially outweighed by its potential to confuse the jury and incite unfair prejudice against Medeiros. The court reasoned that the existence of a child and the installation of a car seat in the backseat of Aggasid's vehicle had only a minimal bearing on Medeiros's position in the vehicle at the time of the impact. In contrast, the ICA stated, the testimony was very likely to confuse the jury and cause Medeiros unfair prejudice because Choy repeatedly referenced it in conjunction with Medeiros's alleged motive of committing worker's compensation fraud, which the ICA had held inadmissible.

Based on these rulings, the ICA vacated the circuit court's judgment and the order denying Medeiros's motion for

judgment as a matter of law, or, in the alternative, for a new trial, and the ICA remanded the case for a new trial.

## II. STANDARD OF REVIEW

### A. Jury Instructions

We review jury instructions to determine whether, considered as a whole, the instructions were "prejudicially insufficient, erroneous, inconsistent, or misleading." Nelson v. Univ. of Haw., 97 Hawai'i 376, 386, 38 P.3d 95, 105 (2001) (internal quotation marks and citations omitted).  Invalid or insufficient instructions are presumptively prejudicial and are grounds for vacating the verdict unless it affirmatively appears from the record as a whole that the error was harmless.  Id.

### B. Evidentiary Rulings

The standard we employ when reviewing the admissibility of evidence varies with the particular evidentiary rule at issue.  State v. West, 95 Hawai'i 452, 456-57, 24 P.3d 648, 653-54 (2001) (citing Kealoha v. Cty. of Haw., 74 Haw. 308, 319, 844 P.2d 670, 676 (1993)).  When a rule is amenable to objective application such that it can result in only one correct answer in a given situation, we review lower courts' application of the rule under the right/wrong standard.  Id. The evaluation of whether evidence is "relevant" within the meaning of HRE Rule 401 (1993) falls into this category of determinations, and we are thus not required to give weight to

13

the trial court's application of the rule. State v. St. Clair, 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003).

When an evidentiary rule calls for a "judgment call" by the trial court, however, the traditional abuse of discretion standard applies. Id. HRE Rule 403 (1993)--under which a trial court weighs the probative value of relevant evidence against its potential to cause unfair prejudice, confuse the issues, or waste time--requires such a judgment call. State v. Richie, 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998). We will therefore set aside a trial court's HRE Rule 403 determination only when it "exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." Samson v. Nahulu, 136 Hawai'i 415, 425, 363 P.3d 263, 273 (2015) (quoting State v. Ganal, 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996)).

## III. DISCUSSION

In his application for a writ of certiorari, Choy presents two questions for our review: 1) "Whether the circuit court should have issued an instruction on Medeiros' motives for bringing the lawsuit," and 2) "Whether the circuit court abused its discretion in denying [Medeiros's] motion in limine to

14

exclude evidence of an unidentified child in the back seat of" Aggasid's car.[9]  We address each issue in turn.

## A. The Requested Jury Instruction as to Irrelevancy of Motive in Bringing a Lawsuit Was Required.

We have often held that "it is error for a trial judge to refuse to give instructions requested which correctly state the law on issues presented unless the points are adequately covered by the instructions given."  Gibo v. City & Cty. of Honolulu, 51 Haw. 299, 304, 459 P.2d 198, 201 (1969); accord Tabieros v. Clark Equip. Co., 85 Hawai'i 336, 371, 944 P.2d 1279, 1314 (1997); State ex rel. Bronster v. U.S. Steel Corp., 82 Hawai'i 32, 52, 919 P.2d 294, 314 (1996).  Thus, a court must give a requested jury instruction when 1) the instruction accurately states the law; 2) the instruction is applicable to an issue presented; and 3) the instruction is not needlessly duplicative.  Because neither party claims that the substance of Medeiros's proposed jury instruction regarding motive in bringing a lawsuit was covered by other instructions given, we

---

[9]  In presenting the second question, Choy's application refers to "Plaintiff's car" rather than Aggasid's car.  Medeiros testified at trial that she had left her car at Aggasid's house on the morning of the accident and that Nursefinders regulations prohibited her from using her personal vehicle to transport patients.  Because it appears to be uncontested that it was Aggasid's car that was involved in the accident, we assume Choy's reference was in error and address only the admissibility of testimony regarding Aggasid's car.

consider whether the instruction correctly stated the law and was applicable to an issue presented.

### 1.    The Relevancy of a Plaintiff's Motive for Bringing Suit

#### a.    Principles of Law

Medeiros requested that the jury be instructed it "may not consider the Plaintiff's motives in bringing the lawsuit" and that "as far as the law is concerned, if the Plaintiff has made out a case on the facts, it is immaterial what her motive was."

In Kobashigawa v. Silva, 129 Hawai'i 313, 315-16, 300 P.3d 579, 581-82 (2013), the wife and daughter of a man killed in a pedestrian crosswalk brought claims for negligence and negligent infliction of emotional distress against the City and County of Honolulu (City).  When deposed, the only eyewitness to the accident testified that she called the daughter of the decedent on the day following the accident, "and the first thing out of [the daughter's] mouth was, 'Would you be willing to testify if we sued?'"  Id. at 316, 300 P.3d at 582.  The eyewitness stated that she took offense to the question and "pretty much hung up, after that" because she was angry that the daughter had "s[een] her father's death with money signs in her eyes."  Id.  The deposition was admitted at trial, and in its closing argument, the City pointed to the witness's testimony in suggesting that the lawsuit was "simply about getting a

16

collectable monetary award from the City."  Id. at 318-19, 300 P.3d at 584-85.

In holding that the City's evidence and commentary were irrelevant and inadmissible, we noted that "it is a long-standing principle of law that a plaintiff's motive in filing a lawsuit is otherwise immaterial to resolving the merits of the dispute."  Id. at 333, 300 P.3d at 599 (emphasis added).  This rule is firmly established in the precedent of this court. See Carter v. Ah So, 12 Haw. 291, 302 (Haw. Terr. 1899) ("So far as the law is concerned, if the plaintiff has made out a case on the facts, it is immaterial what [the] motive was."); Lucas v. American-Hawaiian Eng'g & Constr. Co., 16 Haw. 80, 85-86 (Haw. Terr. 1904) ("[T]he weight of authority is that the motives of a taxpayer in bringing a suit can not be inquired into if he has shown that he has the other qualifications to sue. . . . That motives can not be inquired into is well settled.").

Indeed, the precept that a plaintiff's motives for bringing an action are not relevant to the merits of the suit was regarded as generally accepted within American jurisprudence as far back as the turn of the twentieth century.  In 1900, the United States Supreme Court observed that, "If the law concerned itself with the motives of parties new complications would be introduced into suits which might seriously obscure their real merits."  Dickerman v. N. Tr. Co., 176 U.S. 181, 190 (1900); see

17

also McMullen v. Ritchie, 64 F. 253, 261 (C.C.N.D. Ohio 1894); Toler v. E. Tenn., V. & G. Ry. Co., 67 F. 168, 177 (C.C.E.D. Tenn. 1894); Davis v. Flagg, 35 N.J. Eq. 491, 495 (1882).  The rule has remained well established in courts throughout the nation in the years since.  See, e.g., Johnson v. King-Richardson Co., 36 F.2d 675, 677 (1st Cir. 1930); Somers v. AAA Temp. Servs., 5 Ill. App. 3d 931, 935 (1972); Sharon v. Time, Inc., 599 F. Supp. 538, 586 (S.D.N.Y. 1984); Rhone-Poulenc Rorer Inc. v. Home Indem. Co., No. CIV. A. 88-9752, 1991 WL 183842, at *2 (E.D. Pa. Sept. 16, 1991); Karim v. Gunn, 999 A.2d 888, 890 (D.C. 2010); Tallman v. Freedman Anselmo Lindberg, L.L.C., No. 11-3201, 2013 WL 2631754, at *3 (C.D. Ill. June 12, 2013).[10]

The rule does not bar evidence of a plaintiff's motive in all situations, but rather states only that such evidence is immaterial to resolving the merits of the suit.  Courts have in limited situations admitted evidence of motive when it is used for some matter unrelated to disproving the merits of the underlying action.  When recently considering the matter, the United States District Court for the Eastern District of

---

[10]    Contra Gaudin v. Shell Oil Co., 132 F.R.D. 178, 179 (E.D. La. 1990) (stating, without explanation, that a personal injury plaintiff's credit and financial history was admissible to show that she had an improper motive in bringing the suit); but see Charles A. Wright & Kenneth W. Graham, 22B Federal Practice & Procedure § 5240 n.17 (1st ed.) (referring to Gaudin as a "[s]hocking ruling unless there is more to [the] case than appears from [the] opinion").

18

Virginia discussed four situations when evidence of a plaintiff's motive may bear on such collateral issues. See Samsung Elecs. Co. v. NVIDIA Corp., No. 3:14CV757, 2016 WL 754547, at *2 (E.D. Va. Feb. 24, 2016). First, motive evidence may be admissible when a defendant raises certain equitable defenses such as laches or estoppel. Id. (citing Parsons v. Jefferson-Pilot Corp., 141 F.R.D. 408, 414 (M.D.N.C. 1992)); see also C.L. Maddox, Inc. v. Royal Ins. Co. of Am., 208 Ill. App. 3d 1042, 1051, 567 N.E.2d 749, 755 (1991) (admitting evidence of plaintiff's financial difficulty when arson raised as defense to action to collect on insurance policy). Second, motive may in some instances be considered during class certification when determining whether a plaintiff is an appropriate class representative. Samsung, 2016 WL 754547, at *2 (citing Denny v. Carey, 73 F.R.D. 654, 656 (E.D. Pa. 1977)). Third, courts may consider the motivation of the plaintiff in bringing suit when considering whether to grant various post-disposition motions. See id.; Tallman, 2013 WL 2631754, at *3; Lee v. Kucker & Bruh, LLP, No. 12 Civ. 4662(BSJ)(JCF), 2013 WL 680929, at *2 (S.D.N.Y. Feb. 25, 2013).

Lastly, courts have in narrow circumstances permitted a plaintiff's motive for bringing suit to be considered to demonstrate bias and undermine the credibility of a plaintiff who testifies--when the evidence demonstrates that the plaintiff

19

brought the lawsuit for an ulterior purpose. Samsung, 2016 WL 754547, at *2. In Montoya v. Village of Cuba, No. CIV 11-0814 JB/SMV, 2013 WL 6504291, at *17 (D.N.M. Nov. 30, 2013), for instance, the court permitted inquiry into a plaintiff's motive for pursuing a wrongful arrest claim when it was alleged that the suit was brought in retaliation for the officer-defendant's perceived role in a hospital's decision to discontinue the plaintiff's morphine prescription. Allegations that the suit was brought for the purpose of harassing the defendant were relevant to the plaintiff's credibility because it suggested bias in her testimony other than the bias inherent in the adversarial process. See also Barkley v. City of Klamath Falls, 302 F. App'x 705, 706 (9th Cir. 2008); Heath v. Cast, 813 F.2d 254, 259 (9th Cir. 1987); Montoya v. Sheldon, 898 F. Supp. 2d 1259, 1278 (D.N.M. 2012).

In contrast, evidence that a plaintiff is seeking the relief that is at stake in the case has no additional bearing on the plaintiff's credibility as a witness beyond what is inherent in the very existence of the lawsuit. We thus held in Kobashigawa that testimony that the plaintiffs brought the suit for the purpose of monetary gain was not relevant to the plaintiffs' credibility. 129 Hawai'i at 333-34, 300 P.3d at 599-600. The testimony had no probative value because the plaintiffs' very filing of a complaint established that they

20

sought monetary reparations for the alleged wrong done to them by the defendant.  See id.

In sum, evidence of a plaintiff's motive in bringing a civil action is not material to the substantive elements of the cause of action giving rise to the suit in which it is offered. Such evidence may, however, be admissible for impeaching a plaintiff-witness when it tends to prove that the true purpose of the suit is something other than vindicating the alleged injury through the remedy sought.[11]  This rule coincides with longstanding practices of courts across the nation.

### b.    The Dissent's Proposed Rule

The dissent argues that evidence of a plaintiff's motive for bringing suit may be relevant to impeach a plaintiff's credibility as a witness when "there is evidence to support" that the plaintiff might have filed suit fraudulently or in bad faith.  Dissent at 3.  The dissent distinguishes the "bad faith" in its proffered rule from the bad faith we have identified, appearing to argue that allegations of dishonesty regarding aspects of a claim make evidence or consideration of a

---

[11]    Even when evidence of a plaintiff's motive is relevant to a witness's credibility in the limited situations discussed, its admission must be in compliance with other evidentiary rules, including a determination under HRE Rule 403 that the probative value of the evidence is not substantially outweighed by its potential to confuse the issues and cause undue prejudice.  See Sheldon, 898 F. Supp. 2d at 1278 (limiting cross-examination regarding plaintiff's alleged retaliatory motives for bringing suit in order to avoid introducing undue prejudice into the proceeding).

plaintiff's motive for bringing the lawsuit relevant to the plaintiff's credibility as a witness because money damages create a financial incentive to be untruthful.[12]  Dissent at 8, 8 n.1.  Respectfully, the dissent's approach is contrary to settled law in this jurisdiction, problematic in application, and unworkable in practice.

Plainly, the range of cases in which the defendant could argue that there is evidence of bad faith or questions of fraud with respect to the elements of a claim is virtually limitless (e.g., whether an injury occurred,[13] whether the injury was preexisting or occurred after the incident at issue,[14] whether the defendant's conduct was a cause of the injury,[15]

---

[12]  While the dissent contends that its position is otherwise, the basis of the dissent's argument is that a plaintiff's motive--which here is obtaining financial relief--is relevant to the plaintiff's credibility as a witness when other evidence indicates that the suit may have been brought fraudulently or in bad faith.  A witness's motive affects his or her credibility only insofar as it provides an incentive to testify in a biased or untruthful manner.  Thus, the dissent essentially argues that financial relief provides an incentive for the plaintiff to testify in a biased or untruthful manner regarding the merits of the suit and, by necessary implication, that evidence of such a motive makes it more likely that the suit was brought fraudulently or in bad faith.

[13]  E.g., Royal State Nat'l Ins. Co. v. Labor & Indus. Relations Appeal Bd., 53 Haw. 32, 36, 487 P.2d 278, 281 (1971); Essenburg v. Cabane, 196 F. Supp. 83, 88 (D. Haw. 1961).

[14]  E.g., Montalvo v. Lapez, 77 Hawai'i 282, 292, 884 P.2d 345, 355 (1994); Weite v. Momohara, 124 Hawai'i 236, 243, 240 P.3d 899, 906 (App. 2010).

[15]  E.g., O'Grady v. State, 140 Hawai'i 36, 48, 398 P.3d 625, 637 (2017); Taylor-Rice v. State, 91 Hawai'i 60, 74, 979 P.2d 1086, 1100 (1999); Aga v. Hundahl, 78 Hawai'i 230, 237, 891 P.2d 1022, 1029 (1995).

whether the injury resulted from use of a product,[16] etc.).  The

dissent responds that such an argument "will only arise in

exceptional circumstances."  Dissent at 16.  Yet the bar is not

set overly high.  Here, the responding officer, who offered the

only account of the incident from a neutral party not involved

in the collision, confirmed Aggasid and Medeiros's testimony

that a child and car seat were not present and thus undermined a

core basis of Choy's fraud allegations.[17]  Nonetheless, the

---

[16]     E.g., Udac v. Takata Corp., 121 Hawai'i 143, 156, 214 P.3d 1133, 1146 (App. 2009).  Indeed, an argument that a plaintiff's claim is fabricated is one of the only substantive defenses available in a range of relatively commonplace strict liability causes of action, including when an injury is asserted from an alleged manufacturing defect.  See Johnson v. Raybestos-Manhattan, Inc., 69 Haw. 287, 288, 740 P.2d 548, 549 (1987) ("By definition, a strict products liability action does not require a showing that the defendant was negligent in manufacturing or distributing the product.").

[17]     Officer Brown's testimony was consistent with Medeiros and Aggasid's also in that he testified to witnessing one individual in the back seat of Aggasid's vehicle and two women in the front seat.  Medeiros testified that she got out of the car following the accident and moved to the front seat to comfort Aggasid, who was disturbed by the event.  Medeiros's testimony therefore indicated the two women were sitting in the front seat and Chan was sitting in the backseat when the officer arrived.  Also consistent with Medeiros and Aggasid's testimony was Officer Brown's description of the person in the back seat "who was a little bit smaller than the normal."  Chan was "around 5 feet something," suffered from mental health issues, and would commonly look down.  The dissent argues that an indication of the fraudulent nature of the lawsuit is that Officer Brown characterized the two women as both being over forty and stated that he did not recognize anyone in the courtroom at trial.  Dissent at 12.  Officer Brown testified that he was "not an expert" at judging age and acknowledged that his estimate may have been off.  He also testified only that he could not recall whether Medeiros was one of the car occupants but did not deny that she could have been in the vehicle.  Officer Brown further testified that he had investigated about a thousand traffic accidents in his career as a beat officer and pointed out that the trial in this case occurred more than six years after the accident.  Medeiros's appearance had changed enough over this time period that defense counsel introduced a number of old photographs into evidence to demonstrate to the jury what Medeiros looked like at the time of the collision.

dissent makes clear that the testimony of the defendant and his wife, supported by another driver in the collision, is sufficient to trigger the dissent's rule and somehow make Medeiros's motive of seeking financial relief in a lawsuit relevant to her credibility. As this balance of evidence is sufficient to trigger the dissent's rule, the approach applies in circumstances that are far from "exceptional" within our legal system.

Further, evidence that a plaintiff seeks financial relief in the filing of a lawsuit does not make it more or less likely that the plaintiff is testifying untruthfully, as the dissent appears to contend, nor that the suit was brought fraudulently or in bad faith. Such evidence therefore fails threshold relevancy requirements. See HRE Rule 401. As discussed, evidence that shows only that the plaintiff is seeking the relief requested based on the reasons set forth in the claim has little to no actual bearing on a plaintiff's credibility beyond what is inherent in the very existence of the lawsuit and accordingly serves only to appeal to the prejudices of the finder of fact. Conversely, when there is evidence that a plaintiff is pursuing a case for an ulterior motive unrelated to vindicating the alleged injury through the remedy sought, the evidence is relevant to demonstrate a plaintiff's bias as a

witness regardless of whether there is also evidence of fraud in the underlying lawsuit.  See HRE Rule 609.1 (1980).

The dissent's position is therefore inconsistent with our holding in Kobashigawa v. Silva, which explicitly rejects any direct equivalence between "motive evidence permissible under [HRE] Rule 609.1 to impeach the credibility of a witness" and "evidence of the plaintiff's [financial] motive for filing suit."[18]  129 Hawai'i 313, 334, 300 P.3d 579, 600 (2013). Kobashigawa is clear that evidence of a financial motive for filing a lawsuit "is irrelevant and thus inadmissible," and that HRE Rule 609.1 may not be used as an end-run-around "to question the bias, interest, or motive of the plaintiff bringing the suit."[19]  Id.  Assertions of bad faith or dishonesty may bear on

---

[18]    The dissent appears to conflate different evidentiary concepts, including the admissibility of evidence of present or past instances of bad faith or fraud--which is admissible for the purposes identified in HRE Rule 404 and HRE Rule 608 or to disprove the elements of the claim--with evidence admissible for the purpose of showing the plaintiff's financial motive for bringing the lawsuit.  The principles are distinct.  Evidence of past or current fraudulent conduct may bear on the merits of the claim and a testifying plaintiff's credibility.  Thus, the dissent's conclusion that "evidence indicating that Medeiros may have filed suit against Choy in bad faith and for purposes of perpetuating fraud was relevant to her credibility as a witness" is nearly correct--evidence of fraud is generally relevant. Dissent at 24.  But as stated, evidence of a plaintiff's motive in the filing of a lawsuit--obtaining financial relief--does not make it more or less likely that the plaintiff is testifying untruthfully or that the relief is sought fraudulently or in bad faith.  Such evidence is not relevant, and otherwise admissible evidence thus may not be considered for this purpose. See HRE Rule 401.

[19]    The dissent interprets this principle as suggesting "that Kobashigawa completely precludes evidence of a plaintiff's motive from being used to impeach his or her credibility as a witness in all circumstances." Dissent at 16.  To the contrary, Kobashigawa correctly applied our

(continued . . .)

the merits of the claim and a plaintiff's credibility, but the unproven assertions may not be used to attack the plaintiff for seeking financial relief because a financial motivation for bringing suit does not bear on those issues.  Indeed, leveraging allegations of a monetary motive in order to appeal to a jury's prejudices amounts to an attack on a foundation of our civil justice system--that injured plaintiffs may be properly made whole through monetary relief.

        The dissent relies on several inapposite and insubstantial cases from other jurisdictions to argue that its approach has been recognized by "numerous other courts." Dissent at 9-10, 17.  A review of the cited cases demonstrates that the defense's proposed rule has little support in the precedents of other jurisdictions.

        In Valdez v. State ex rel. Farrior, 142 Fla. 123, 137, 194 So. 388, 394 (1940), for instance, the court stated in dicta that equitable relief might be unavailable where a plaintiff's hands are rendered "unclean" by the improper purpose of the lawsuit.  The court did not suggest that the plaintiff's motive

---

(. . . continued)

evidentiary rules to prohibit impeachment with evidence that the plaintiff is seeking monetary relief in the case, which is not relevant to a plaintiff's credibility.  As stated, evidence that the plaintiff possesses an ulterior motive for filing the suit is relevant to a plaintiff's credibility and, absent some other evidentiary bar, wholly admissible for impeachment purposes.

for bringing suit could be relevant to the plaintiff's credibility, but rather that it could be relevant to an equitable defense--one of the purposes that our analysis specifically identified as permissible. Similarly, the dissent quotes a passing reference in dicta in the unpublished opinion of Caldwell v. Wal-Mart Stores, Inc., No. 99-2272, 2000 WL 1335564, at 5* (10th Cir. Sept. 15, 2000), in which the court stated that the plaintiff's financial motivation for filing suit was irrelevant "[a]bsent some evidence of fraud." The sole case the Caldwell court cited for this proposition concerned evidence of the plaintiff's financial motive to commit arson--a potential defense in his action against his insurance company that was very similar to the clean hands defense considered in Valdez, which again is consistent with the exception recognized in our analysis. See C.L. Maddox, Inc. v. Royal Ins. Co. of Am., 567 N.E.2d 749, 755 (Ill. App. 1991).[20]

The dissent also cites Yates v. Sweet Potato Enterprises, Inc., Case No: C 11-01950 SBA, 2013 WL 4067783, at

---

[20] It is also noted that, in reaching its holding, the Caldwell court considered the Gaudin v. Shell Oil Co. decision discussed supra note 10. 2000 WL 1335564, at *5 n.4 (citing 132 F.R.D. 178, 179 (E.D. La. 1990)). The Caldwell court specifically disclaimed Gaudin's admission of evidence intended to show that the plaintiff "had an improper [financial] motive in bringing the suit," describing the holding as "remarkable, to say the least." Id. (emphasis added). Thus, even some of the cases on which the dissent relies reject an approach that equates evidence of a plaintiff's motivation for bringing suit with evidence that the suit is fraudulent.

*2 (N.D. Cal. Aug. 1, 2013), an unpublished trial order on motions in limine, which explicitly addressed only evidence of the plaintiff's "prior litigation activities"--not the plaintiff's motivation for bringing the case in which the evidence was offered. Further, in ruling that the evidence was admissible, the Yates court stated, "A claim for money damages does create a financial incentive to be untruthful, and it was not improper for opposing counsel to invoke this incentive in an attempt to impeach plaintiff." Id. at *4 (quoting Marcic v. Reinauer Transp. Cos., 397 F.3d 120, 125 (2d Cir. 2005)). This statement is plainly at odds with our holding in Kobashigawa prohibiting impeachment of a plaintiff-witness with evidence of a financial motivation for bringing suit. 129 Hawai'i at 334, 300 P.3d at 600. Further, its overbreadth is apparent on its face; if evidence of a plaintiff's motive for bringing suit is admissible for impeachment purposes whenever a plaintiff seeks monetary damages, admittance of evidence of motive would be the rule in nearly all civil cases rather than the exception. Another unpublished order cited by the dissent, Beyar v. City of New York, No. 04-CV-3765 (JFB)(KAM), 2007 WL 1959010 (E.D.N.Y. June 29, 2007), denied a post-trial motion for new trial or to set aside the verdict, relying on the same passage cited in Yates that we rejected in Kobashigawa. Id. at *4. The Beyar court also hedged its conclusions, stating that the jury

28

instructions cured the potential prejudice "even if defense counsel's remarks were improper." Id.

In all, it is clear the dissent's rule has not been adopted in numerous jurisdictions. At most, it finds some scant support in two unpublished orders that rely on an interpretation of relevance that this court squarely rejected in Kobashigawa.

Aside from the doctrinal shortcomings in the dissent's approach, it also raises a host of intractable procedural problems. The dissent's criterion to admit evidence of a plaintiff's financial motive appears to be virtually bottomless: "when there is evidence to support" that the lawsuit may have been filed in bad faith or with fraudulent intentions. Dissent at 3, 8. Thus, it appears that any evidence to support such an inference would be sufficient. In this case, the evidence at trial raised questions as to (1) whether Medeiros was present at the accident scene, (2) where she was sitting at the time of the collision, (3) whether she was facing sideways during the impact, and (4) whether she sustained the injuries claimed. The number of similar issues in personal injury cases in which there may be evidence triggering the dissent's rule would render the test for admissibility virtually meaningless.[21]

---

[21] See supra notes 13-16.

Assuming that the "evidence to support" standard does not essentially make the evidence of bringing a lawsuit to seek financial relief automatically admissible, the dissent offers no specifics as to how the admissibility determination is made, such as: what evidence should be considered by the court in making its determination; what burden of proof applies to show that the suit was filed fraudulently or in bad faith; and at what stage of the litigation the assessment should take place. If the evaluation amounts to a preliminary determination under HRE Rule 104 (1984),[22] the dissent's rule would seemingly require a judge to conduct a miniature trial prior to the actual trial under the semblance of an HRE Rule 104 proceeding, hearing the same witnesses and considering the same evidence that would be presented at trial in order to make a preliminary ruling as to whether there is sufficient evidence (on seemingly ultimate issues in the case) to admit evidence of financial motive to bring the suit.[23]  This procedural mire would all be for the

_____

[22]    HRE Rule 104 primarily addresses the "determination of . . . a preliminary fact," whereas the evaluation called for by the dissent as to the presence of fraud would appear to be at best a mixed question of fact and law.  It is far from clear that such a determination would fall within the scope of HRE Rule 104, and if not some other means unspecified by the dissent would need to be employed.

[23]    Here, the preliminary assessment would require the trial judge to consider, at minimum, the testimony of Medeiros, Aggasid, Choy, Choy's wife, and Officer Brown.  An accurate determination would likely also require the judge to hear from Medeiros's doctor and other personnel who handled Medeiros's worker's compensation claim to determine whether Medeiros's injuries reasonably could have arisen from the collision.

purpose of determining the admissibility of evidence without any probative value.[24]

Moreover, the "basic precondition for admissibility of all evidence," is that it is "'relevant' as that term is defined in [HRE] Rule 401." Commentary to HRE Rule 402 (1980) (emphasis added). As stated, seeking financial relief in a lawsuit does not make it more or less likely that a plaintiff is testifying untruthfully or that the relief is sought in bad faith or for the purpose of committing fraud, and therefore such evidence is not relevant under HRE Rule 401. The dissent does not dispute this basic principle, yet repeatedly asserts that "evidence of a plaintiff's motive in filing suit may be relevant to the plaintiff's credibility in narrow circumstances where there is evidence to support that the plaintiff dishonestly sought relief that he or she knew that he or she was not entitled to, at the expense of another." Dissent at 13. But because evidence of a plaintiff's motive in seeking financial relief in a lawsuit is not a fact of consequence to the plaintiff's credibility (i.e., it does not make it more or less likely that the plaintiff is testifying truthfully or that the lawsuit is brought in bad

---

[24] Procedural questions also arise regarding the effect that the evidence would be given once it is admitted, such as whether jurors would be required to disregard the plaintiff's motive for bringing the lawsuit in determining the elements of the plaintiff's claim if they find that the suit had not been brought fraudulently or in bad faith.

faith), the dissent essentially applies a definition of "relevant" other than the one prescribed in HRE Rule 401. However, it is the HRE that govern proceedings in the courts of this state, subject only to exceptions not applicable here. HRE Rules 101, 1101(a), (b) (1980). And these Rules do not permit the admission of evidence that does not satisfy HRE Rule 401, nor do the Rules countenance a court-created exception for "extraordinary cases," regardless of the breadth of the exception advocated.

Thus, the dissent's approach is legally flawed and has no basis in our well-established precedent. The cumbersome obstacles and potential for unwarranted prejudice it would introduce confirms what the U.S. Supreme Court observed over a century ago: "If the law concerned itself with the motives of parties new complications would be introduced into suits which might seriously obscure their real merits." Dickerman v. N. Tr. Co., 176 U.S. 181, 190 (1900).

2.      **The Accuracy and Applicability of Medeiros's Requested Instruction to Issues in the Case**

Medeiros proposed that the jury be instructed that it "may not consider the Plaintiff's motives in bringing the lawsuit. So far as the law is concerned, if the Plaintiff has made out a case on the facts, it is immaterial what her motive was." This is a correct statement of the law as it applied to

32

this case.  Choy offered no evidence indicating that Medeiros had any motivation for bringing the action other than obtaining the monetary relief she sought.  The jury therefore should not have been permitted to consider in its deliberations Medeiros's motives for bringing suit.

Choy argues that regardless of the accuracy of the instruction as a statement of law, the court was not obligated to include it in its charge to the jury because it was not applicable to the issues raised during trial.  But as Choy admits, he sought to elicit evidence for the purpose of demonstrating that Medeiros committed worker's compensation fraud for monetary gain and that the lawsuit was similarly motivated.  Without the requested instruction, a jury could readily believe that the lawsuit was part of that alleged scheme and thus shared a common motivation--indeed, Choy encouraged the jurors to so conclude, stating in closing argument that the jury would not be proud of a verdict in Medeiros's favor because it would "accomplish[] exactly what she set out to accomplish the moment she informed Dr. Miscovich she was in a car accident and then convert it to a workers' compensation claim."

Alternately, a juror might believe that Medeiros became emboldened by the success of her initial worker's compensation fraud and decided to extract further monetary gain from the same fabrication by bringing a lawsuit.  Under HRE Rule

33

404(b) (1994), evidence of past wrongs is inadmissible to prove a person's character in order to show actions in conformity therewith. The absence of the requested jury instruction allowed the jury to infer such an impermissible connection between the allegedly fraudulent worker's compensation claim and the lawsuit. Further, a juror unfamiliar with the functioning of the worker's compensation regime might believe the lawsuit was in some way needed to fulfill Medeiros's legal obligations resulting from the payment of the worker's compensation claim--a misconception Choy potentially reinforced by asserting in closing argument that Medeiros was attempting to hold him "responsible for reimbursing that false claim."[25] Without the requested instruction, a jury could base its verdict on this erroneous understanding.

Given the substantial possibility that the jury would consider the evidence adduced as it related to Medeiros's motives for bringing suit, Medeiros's proposed instruction was applicable to the issues raised by the case. See Radford v. Morris, 52 Haw. 180, 186, 472 P.2d 500, 504 (1970) (holding that an instruction was required because "without the instruction the

[25] Although Medeiros's employer would have had a right to recoup its expenditures from any recovery Medeiros received from Choy, our worker's compensation laws do not mandate that an injured worker file suit against a responsible third party. See Hawaii Revised Statutes § 386-8 (2015).

34

jury could [make] erroneous[] assum[ptions]" about the applicable law). In essence, the circuit court implicitly acknowledged the potentiality for misuse of the evidence when it denied Medeiros's requested instruction. The court noted that it would reconsider the request if Choy mentioned Medeiros's motives for bringing suit in his closing argument. But in recognizing the possibility of Choy arguing about Medeiros's motives in closing argument, the court effectively found that inferences about Medeiros's motives could be made from the evidence. See State v. McGhee, 140 Hawai'i 113, 119, 398 P.3d 702, 708 (2017). This recognition of the state of the evidence necessitated the timely submission of the requested jury instruction to restrict the jury from using that evidence to consider Medeiros's motive in bringing her claim. See Hawai'i Rules of Civil Procedure Rule 51(c)-(d) (2000) (setting forth a settlement and revision process to take place "prior to [counsel's] arguments to the jury"). The court was not at liberty to defer its submission of the instruction based on the extent that the closing argument dwelled on the alleged improper motive in bringing the lawsuit.

Thus, because the jury instruction was a correct statement of the law, was applicable to the issues presented, and was not covered by other instructions, the circuit court was required to submit it to the jury. Gibo v. City & Cty. of

35

Honolulu, 51 Haw. 299, 304, 459 P.2d 198, 201 (1969).  We presume that the court's failure to do so was prejudicial unless it affirmatively appears that the error was harmless.  Nelson v. Univ. of Haw., 97 Hawai'i 376, 386, 38 P.3d 95, 105 (2001). Considering the record as a whole and in light of Choy's closing argument, the failure to submit the instruction was not harmless.  See Kobashigawa v. Silva, 129 Hawai'i 313, 334, 300 P.3d 579, 600 (2013) (holding that the "City's closing argument added to the harm caused by the circuit court's erroneous jury instruction" (quoting Kobashigawa v. Silva, 126 Hawai'i 62, 66-67, 266 P.3d 470, 474-75 (App. 2011))); see also id. (stating that "in conjunction with the lower court's failure to properly instruct the jury, a defense counsel's reference to the plaintiff's motive in bringing suit was grounds for a new trial" (citing Kakligian v. Henry Ford Hosp., 48 Mich. App. 325, 210 N.W.2d 463, 465 (1973))).

### B. Restricting Consideration of Motive for Bringing Suit on Remand Will Address the Prejudice that the ICA Ascribed to the Challenged Testimony.

Choy argues that the ICA erred in holding that the circuit court abused its discretion in admitting testimony regarding the presence of a child and the retrieval and

installation of a car seat in the backseat of Aggasid's vehicle.[26]

As an initial matter, the ICA held that the issue of Medeiros's presence in Aggasid's vehicle at the time of the accident was inseparable from her motives for filing suit, and that under Kobashigawa, these motives were immaterial. The ICA concluded that the testimony regarding the child and the retrieved car seat was therefore not admissible for the purpose of proving Medeiros's presence in the vehicle at the time of the accident (although the court ultimately held that the evidence was relevant to show the parties' position in the vehicle when the accident occurred). However, Medeiros's alleged absence from the vehicle bore on more than simply her motives for bringing suit. If true, Medeiros's absence would definitively settle the issue of causation because Medeiros could not have been injured by Choy if she was not present in Aggasid's vehicle

---

[26] Choy contends that Medeiros did not properly preserve this issue because the circuit court's denial of Medeiros's motion in limine was not a definitive ruling on admissibility and Medeiros did not renew her objection when testimony concerning the challenged subject matter was elicited at trial. See Craft v. Peebles, 78 Hawai'i 287, 295, 893 P.2d 138, 146 (1995) (holding that, absent a definitive pretrial ruling on admissibility, a renewed objection at trial is required to preserve the issue for appellate review). Medeiros responds that, because Choy did not argue this point before the ICA, his argument is itself waived. See Hawai'i Rules of Appellate Procedure Rule 28(b)(7) (2016) (specifying that arguments not raised before the ICA may be deemed waived). In light of our disposition of this case, it is not necessary to address whether the challenge to the testimony's admissibility was properly preserved or whether the issue of preservation has been waived.

at the time of the collision.  Whether Medeiros was present was thus of great consequence in determining the action, and evidence bearing on her presence in the vehicle was relevant.[27]

The ICA held that the circuit court abused its discretion by failing to exclude the testimony under HRE Rule 403 (1993).  HRE Rule 403 provides that even "relevant[] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Samson v. Nahulu, 136 Hawai'i 415, 430, 363 P.3d 263, 278 (2015) (quoting HRE Rule 403, Commentary).

---

[27]    Choy argues at length that the testimony regarding the presence of a child also demonstrates that Medeiros filed a fraudulent worker's compensation claim, and that this bears on her credibility as a witness.  HRE Rule 608(b) (1993) permits witnesses to be impeached by specific instances of conduct that are probative of untruthfulness.  The allegations of worker's compensation fraud have very minimal probative value with respect to Medeiros's credibility because they have largely the same factual predicate as the ultimate issue in this case--namely, whether Medeiros was injured in the January 23, 2007 accident that Choy caused.  In other words, the issue would have very little bearing on Medeiros's credibility because Medeiros's presence or absence from the collision is determinative both of her claim and the alleged fraud.  Consequently, any probative value the allegations have on Medeiros's character for veracity is far outweighed by the potential for the jury to improperly consider the evidence with respect to Medeiros's motives for bringing suit.  See supra.  Thus, even if the evidence were admissible for this purpose under HRE Rule 608(b), it would undoubtedly be excluded under HRE Rule 403.

The ICA concluded that the probative value of the testimony regarding the child and retrieved car seat was substantially outweighed by its potential for creating unfair prejudice against Medeiros because the circuit court did not provide Medeiros's requested jury instruction, which permitted Choy to frequently reference the evidence in conjunction with Medeiros's allegedly improper motives. Choy's remarks throughout the trial created a substantial likelihood that the jury would consider the evidence for an improper purpose, the ICA held.[28] In light of our remand for a new trial, the same consideration should not arise given our ruling that the jury must be instructed to not consider the Plaintiff's motives in bringing the lawsuit. Consequently, the challenged testimony on remand would not be excludable under HRE Rule 403 based solely on the concern that the jury would consider the evidence as it bears on Medeiros's motivation for bringing suit.[29]

---

[28] It is noted that the ICA erred to the extent that it considered Choy's comments during closing arguments as part of its evaluation in determining the admissibility of the challenged testimony under HRE Rule 403.

[29] At trial, Choy elicited testimony and made comments in his closing argument indicating that the child alleged to be present in Aggasid's vehicle was not properly restrained prior to and during the accident. Additionally, Choy has made numerous references to the allegedly unrestrained status of the child in his filings on appeal and to this court. Although we have determined that evidence regarding the alleged presence of the child and the retrieval of a car seat would not be excludable under HRE Rule 403 on the ground that the jury would potentially consider the evidence with respect to Medeiros's motivation in bringing suit--as the jury would be instructed that it may not consider the evidence for this purpose--testimony or argument as

(continued . . .)

## IV. CONCLUSION

For the foregoing reasons, we hold that the jury should have been instructed to disregard Medeiros's motives for bringing suit, and the circuit court's failure to do so was prejudicial error.  We therefore affirm the ICA's July 13, 2016 judgment on appeal and remand the case to the circuit court for further proceedings consistent with this opinion.

Thomas Tsuchiyama                       /s/ Sabrina S. McKenna
for petitioner

                                       /s/ Richard W. Pollack

Derek S. Nakamura
for respondent                           /s/ Michael D. Wilson



---

(. . . continued)

to the safety risk of an unrestrained child, violation of safety laws, or endangerment of a child would be subject to HRE Rules 401 and 403 on retrial.